IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JORDAN MAY; JASMINE MAY; AVA MAY as next of kin of Juan O'Neil May, deceased; and JINDIA MAY BLUNT as representative of the estate of Juan O'Neil May, deceased, | § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. **3:16-CV-1674-L** |
| THEDRICK ANDRES and THE CITY OF ARLINGTON POLICE DEPARTMENT, | § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendant City of Arlington Police Department's Motion to Dismiss under Rule 12(b)(1) and 12(b)(6), filed July 20, 2016; Defendant Sgt. Thedrick Andres' Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) and Alternative Request That Plaintiffs Reply to His Immunity; filed August 2, 2016; Defendant Sgt. Andres' Motion to Stay Discovery, filed August 2, 2016; and Defendant Sergeant Thedrick Andres' Motion for Leave to Supplement Briefing on Motion to Dismiss, filed January 30, 2017. No responses were filed to the first three motions, and the time has not expired to file a response to the most recently filed motion. After careful consideration of the motions, briefs, pleadings, and applicable law, the court **grants,** to the extent herein stated, Defendant City of Arlington Police Department's Motion to Dismiss under Rule 12(b)(1) and 12(b)(6); Defendant Sgt. Thedrick Andres' Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) and Alternative Request That Plaintiffs Reply to His Immunity; and Defendant Sgt.

**Memorandum Opinion and Order – Page 1**

Andres' Motion to Stay Discovery.  The court **denies** Defendant Sgt. Thedrick Andres' Motion for Leave to Supplement Briefing on Motion to Dismiss.

## I.      Background

On June 21, 2016, Jordan May, Jasmine May and Ava May as next of kin of Juan O'Neil May, deceased; and Jindia May Blunt, as representative of the estate of Juan O'Neil May, deceased (collectively, "Plaintiffs"), filed this action against Thedrick Andres ("Defendant" or "Andres") and the City of Arlington Police Department ("APD").  This action arises from an incident in which Andres shot and killed Juan May on June 22, 2014.  At the time of the incident giving rise to this action, Andres was a police officer of the APD.  Andres was not on duty at the time of the shooting.  Plaintiffs allege a cause of action for homicide against Andres and contend that Andres "pulled his gun and shot [Juan] May and killed him in cold blood."  Pls.' Orig. Compl. ¶ 22.

As a result of the shooting, Plaintiffs sued the APD and Andres pursuant to 18 U.S.C. § 242 to recover compensatory damages, including mental anguish, and exemplary damages. Plaintiffs also contend the APD has a pattern or practice that allows or condones the use of excessive force by its police officers that has deprived "a segment of [the] community [of its] constitutional rights."  Pls.' Orig. Compl. ¶ 16.  They further contend that the APD knew or should have known that Andres had a history of abusing his authority while off duty.

The APD seeks dismissal of Plaintiffs' Original Complaint ("Complaint") for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

Andres contends that Plaintiffs effectively seek to bring a criminal prosecution against him, as the statute under which Plaintiffs sue him, 18 U.S.C. § 242, pertains to criminal prosecutions, not actions in which one seeks to hold another person civilly liable.  Andres also contends that he

**Memorandum Opinion and Order – Page 2**

is entitled to qualified immunity because Plaintiffs have not pleaded specific facts that would defeat his entitlement to qualified immunity.  For these reasons, Andres requests that the court dismiss Plaintiffs' Complaint or, alternatively, require Plaintiffs to replead the allegations with the requisite specificity by way of a reply.

## II.    Standards

### A.    Rule 12(b)(1) - Subject Matter Jurisdiction

A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States," or over civil cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and in which diversity of citizenship exists between the parties.  28 U.S.C. §§ 1331, 1332.  Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim.  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citations omitted); *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).  Absent jurisdiction conferred by statute or the Constitution, they lack the power to adjudicate claims and must dismiss an action if subject matter jurisdiction is lacking.  *Id.*; *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)).  A federal court must presume that an action lies outside its limited jurisdiction, and the burden of establishing that the court has subject matter jurisdiction to entertain an action rests with the party asserting jurisdiction.  *Kokkonen*, 511 U.S. at 377 (citations omitted).  "[S]ubject-matter jurisdiction cannot be created by waiver or consent."  *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001).

Federal courts may also exercise subject matter jurisdiction over a civil action removed from a state court.  Unless Congress provides otherwise, a "civil action brought in a State court of

**Memorandum Opinion and Order – Page 3**

which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

A federal court has an independent duty, at any level of the proceedings, to determine whether it properly has subject matter jurisdiction over a case.  *Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) (A "federal court may raise subject matter jurisdiction *sua sponte*.") (citation omitted).

In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001) (citation omitted).  Thus, unlike a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court is entitled to consider disputed facts as well as undisputed facts in the record and make findings of fact related to the jurisdictional issue.  *Clark v. Tarrant Cnty.*, 798 F.2d 736, 741 (5th Cir. 1986).  All factual allegations of the complaint, however, must be accepted as true. *Den Norske Stats Oljeselskap As*, 241 F.3d at 424.

The court included this standard because Defendants asserted that the court lacked subject matter jurisdiction on certain claims.  Upon reviewing the filings, the court found it premature to address subject matter jurisdiction, as it addressed relevant matters pursuant to Federal Rule of Civil Procedure 12(b)(6).  Moreover, for the reasons herein set forth, Plaintiffs will have to replead in accordance with the court's instructions.  If the amended pleadings indicate that this court lacks subject matter jurisdiction, the issue may be addressed as appropriate.

**Memorandum Opinion and Order – Page 4**

### B.        Rule 12(b)(6) - Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any

**Memorandum Opinion and Order – Page 5**

documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted). Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief

can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

### C.   Qualified Immunity

#### 1.   Federal

Government officials who perform discretionary functions are entitled to the defense of qualified immunity, which shields them from suit as well as liability for civil damages, if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A defendant official must affirmatively plead the defense of qualified immunity. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Andres has asserted this defense in his motion to dismiss.

In deciding a dispositive motion that raises the defense of qualified immunity, the Supreme Court initially set forth a mandatory two-part inquiry for determining whether a government official was entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Under *Saucier*, a court must determine first whether the facts alleged or shown are sufficient to make out a violation of a constitutional or federal statutory right. If the record sets forth or establishes no violation, no further inquiry is necessary. On the other hand, if the plaintiff sufficiently pleads or establishes that a violation could be made out, the court must determine whether the right at issue was clearly established at the time of the government official's alleged misconduct. *Id.* The Court relaxed this mandatory sequence in *Pearson v. Callahan*, 555 U.S. 223 (2009), and stated, "[W]hile the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded

as mandatory," and judges "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. The second prong of the test "is better understood as two separate inquiries: whether the allegedly violated constitutional right[] [was] clearly established at the time of the incident; and if so, whether the conduct of the defendant[] [official] was objectively unreasonable in light of then clearly established law." *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (internal quotation marks and citations omitted); *see also Evans v. Ball*, 168 F.3d 856, 860 (5th Cir. 1999); *Hare v. City of Corinth,* 135 F.3d 320, 326 (5th Cir. 1998); *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995), *cert. denied*, 517 U.S. 1191 (1996).

Ordinarily, one who pleads an affirmative defense must establish his entitlement to such defense. In the context of qualified immunity, however, this burden varies from the norm. In this circuit, the rule is as follows:

> Where . . . [a] defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff then has the burden to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law. We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.

*Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997) (internal quotations and citations omitted); *see also Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

A right is "clearly established" only when its contours are sufficiently clear that a reasonable public official would have realized or understood that his conduct violated the right in issue, not merely that the conduct was otherwise improper. *See Anderson v. Creighton,* 483 U.S. 635, 640 (1987); *Foster v. City of Lake Jackson*, 28 F.3d 425, 429 (5th Cir. 1994). Thus, the right

must not only be clearly established in an abstract sense but in a more particularized sense so that it is apparent to the official that his actions [what he is doing] are unlawful in light of pre-existing law. *Anderson v. Creighton*, 483 U.S. at 640; *Stefanoff v. Hays County*, 154 F.3d 523, 525 (5th Cir. 1998); and *Pierce v. Smith*, 117 F.3d at 871.

In *Anderson*, 483 U.S. at 641, the Court refined the qualified immunity standard and held that the relevant question is whether a reasonable officer or public official *could have believed* that his conduct was lawful in light of clearly established law and the information possessed by him. If public officials or officers of "reasonable competence could disagree [on whether the conduct is legal], immunity should be recognized."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (*citing Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)). Qualified immunity is designed to protect from civil liability "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. at 341.  Conversely, an official's conduct is not protected by qualified immunity if, in light of clearly established pre-existing law, it was apparent the conduct, when undertaken, would be a violation of the right at issue.  *Foster*, 28 F.3d at 429.  To preclude qualified immunity, it is not necessary for a plaintiff to establish that "the [specific] action in question has previously been held unlawful." *Anderson*, 483 U.S. at 640. For an official, however, to surrender qualified immunity, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law *in the circumstances.*" *Pierce v. Smith*, 117 F.3d at 882 (emphasis in original and citation omitted); and *Stefanoff v. Hays County*, 154 F.3d at 525.  Stated differently, while the law does not require a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate."  *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (citations omitted).

**Memorandum Opinion and Order – Page 9**

In analyzing qualified immunity claims, the Supreme Court has "repeatedly told courts …

to not define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S. Ct.

305, 308 (2015) (citation omitted).   Pursuant to *Mullenix*, courts must consider "whether the

violative nature of *particular* conduct is clearly established" and must undertake this inquiry "in

light of the specific context of the case, not as a broad general proposition." *Id.* (citations and

internal quotations marks omitted).

To defeat or overcome an official's qualified immunity defense, a plaintiff's complaint

must allege specific facts that, if proved, would show that the official's conduct violated clearly

established constitutional or statutory rights.   In cases involving claims of qualified immunity,

often it is appropriate to require a plaintiff to file a detailed reply to address the plea of qualified

immunity. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc).   "[T]he reply must be

tailored to the assertion of qualified immunity and fairly engage its allegations.   A defendant has

an incentive to plead his defense with some particularity because it has the practical effect of

requiring particularity in the reply." *Id.* A plaintiff generally must be given the opportunity to

reply with greater specificity in such cases before the court rules on a defendant's dispositive

motion. *Todd v. Hawk*, 72 F.3d 443, 446 (5th Cir. 1996).

A reply, however, is only required when the claims in the complaint are not supported

"with sufficient precision and factual specificity to raise a genuine issue as to the illegality of [a]

defendant's conduct at the time of the alleged acts." *Schultea*, 47 F.3d at 1434.   If "the pleadings

on their face show an unreasonable violation of a clearly established constitutional right," the

assertion of a qualified immunity defense is insufficient to sustain a Rule 12(b)(6) motion to

dismiss. *Shipp v. McMahon,* 234 F.3d 907, 912 (5th Cir. 2000), *overruled in part on other grounds*

*by McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002) (en banc).

**Memorandum Opinion and Order – Page 10**

### 2. Texas

Texas qualified or official immunity "is similar [to federal qualified immunity], but focuses solely on the objective legal reasonableness of the officer's conduct.   Whether the allegedly violated right was 'clearly established' is irrelevant." *Shaboon v. Duncan*, 252 F.3d 722, 729 (5th Cir. 2001) (citation omitted).   Under Texas law, "[g]overnment employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." *City of Lancaster v. Chambers*, 833 S.W.2d 650, 653 (Tex. 1994).   The "good faith" element is essentially "the same as the federal 'objective legal reasonableness' test." *Shaboon*, 252 F.3d at 735.

## III.   Discussion

### A.   Factual Allegations of Plaintiffs' Complaint

In ruling on the motion, the alleged facts giving rise to the shooting are critical. Accordingly, the court sets forth the following operative facts as alleged in Plaintiffs' Complaint:

> 7.      On or about June 21, 2014, around 9:30 p.m., Juan May, Thedrick Andres and other friends all left Pappadeaux's Seafood Kitchen in Duncanville, TX[,] to celebrate Edwin Debiew's birthday.   They were being escorted that night with the services of a party bus.   Everyone was having a wonderful time throughout the night.   It was what was expected from a birthday celebration; drinking, eating, laughter, partying, dancing, and picture taking.   The night included stops at Absinthe Lounge, American Airlines Center, W Dallas Victory Hotel, and Kenichi Restaurant.

> 8.      The group left the birthday festivities around midnight and proceeded back to Pappadeaux's Seafood Kitchen.   On the way back, Patrick May, Juan May's cousin, suggested Andres dance on the stripper pole that was inside of the party bus since Andres had been dancing all night.   Officer Andres took offense to Patrick May's offer and asked why Patrick wanted him to dance on the pole[,] especially since Patrick had a "broad with him."   Andres then calls Patrick "suspect" and a "dick in the booty ass nigga." ([A] "broad" is a derogatory term used towards women. Andres was referring to Patrick's lady friend named Robbin Gibson.   A "dick in the booty ass nigga" is a derogatory term used when a person thinks another person is acting like a homosexual.)   The tension on the bus was high after the

heated exchange.  Juan decided to lift the mood[,] so he started dancing on the pole just to make everyone laugh.  Andres was heard talking to his wife.  He told her, "[T]hese niggas got me f----- up, and they don't know who they are f---ing with."

9.      As the bus got closer to Pappadeaux's, Edwin Debiew thanked everyone for coming out and spending time with him as he celebrated his birthday.  The bus arrived around 12:30 a.m.  Before everyone got off, Edwin asked them to help collect the garbage and clean up the bus.  Some people stayed on the bus as others exited.  Andres was still upset about what happened on the bus and instead of leaving, he stood across from Juan.  Juan had his back turned to Andres as he continued to assist with the cleanup of the bus.  Patrick walks to Juan and whispers something in his ear.  Juan puts down the box, walked towards Andres, and Juan said, "[W]e aren't going to do all this tonight."  Andres said something to Juan[,] and Juan hit Andres in the face.  Andres stumbled and started fighting back.  Patrick went over to where Juan and Andres were fighting and tried to break up the fight.  Andres punched Patrick in the face and that started the fight between those two.  Andres was acting like a wild animal and was swinging and punching both men.  Andres lost his footing and fell on the ground. Patrick and Juan continued to fight Andres before Juan walked away.

10.     Once the fight ended between Patrick and Andres, Andres ran towards his car. Andres'[s] wife, Forynthia Andres, opened the car door with the remote she was holding. At this point, there was no threat or anymore fighting by anyone.  A couple of people started yelling that Andres was about to get a gun.  After hearing this and to prevent Andres from getting a gun, Juan followed behind him and told him to stop.  Juan reached out to grab Andres to prevent him from getting any weapons out of his car but was unsuccessful.  Andres started yelling to Juan that he was a cop.  Not until this very moment did Andres feel it was necessary to start yelling that he was a "cop."  After yelling he was a cop, Andres jumped in his car, bent down to get his gun, came up and yelled he was a cop, and shot Juan in the chest.  Juan never punched Andres during the course of the last few seconds of his life.  Juan was trying to prevent Andres from getting a gun and possibly killing someone but unfortunately, he took the bullet for everyone.  The time he spent in the military instilled in him to always protect others even at the cost of his own life.  After Juan was shot, he stood and backed away from Andres for a few seconds before falling over.

11.     After Officer Thedrick Andres killed Juan May, he started talking to Edwin Debiew.  Debiew told Andres to give him the gun.  Two people were tending to Juan.  Duncanville Police Department arrived at the scene.  Someone yelled that Andres is an officer.  They went directly to Andres and started speaking with him.  Not at any time did Duncanville Police Department tend to Juan.  During this time, no one saw any bruises on Andres['s] face.  There was no swelling, no blood of his own, and no scratches anywhere on Andres['s] face or head.

**Memorandum Opinion and Order – Page 12**

12.     Mr. May was eventually transported to Methodist Hospital via ambulance and was pronounced dead on June 22, 2014[,] at 1:17 A.M.

13.     On June 22, 2014[,] at 7:30 A.M.[,] an autopsy was performed on Juan May by Southwestern Institute of Forensic Sciences at Dallas, Office of the Medical Examiner.

14.     Based on what was presented to the medical examiner and based on the autopsy[,] it is [ ] the medical examiner's opinion that Juan May, a 45-year-old black male, died as a result of a gunshot wound of the chest.  The medical examiner ruled the manner of death was "Homicide."

Pls'. Orig. Compl. ¶¶ 7-14.

### B.     The Arlington Police Department's Motion to Dismiss

### 1.     Failure to State a Claim

The APD contends that Plaintiffs have failed to state a claim upon which relief can be granted against it because the APD, as a department or agency of the City of Arlington, lacks legal capacity to sue or be sued and, therefore, cannot be named as a defendant.  The court agrees.

Plaintiffs sued the APD but did not sue the City of Arlington, the political subdivision that established the APD.  The court takes judicial notice pursuant to Federal Rule of Evidence 201 that the City of Arlington is a home-rule city and that the APD is a department of the City of Arlington.  To sue a city department, a plaintiff must show that the department has legal existence separate and distinct from the city itself.  *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) (citation omitted).  "[U]nless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government entity itself."  *Id.* (citation omitted).  No allegations in Plaintiffs' Complaint even intimate that the APD has jural existence separate and apart from the City of Arlington, or that the City of Arlington has taken steps to grant the APD jural authority.  Thus, Plaintiffs have failed to state a claim upon which relief can be granted against the APD.  Although

**Memorandum Opinion and Order – Page 13**

the court will grant the APD's motion to dismiss, it will allow Plaintiffs an opportunity to file an amended pleading, and add the City of Arlington as a party or set forth allegations that the APD has legal existence separate and distinct from the City of Arlington.  However Plaintiffs elect to proceed, they must plead in accordance with the standard set forth in section II(B) of this opinion.

### 2.        Inapplicable Legal Provision or Theory

The APD contends 18 U.S.C. § 242 is an inapplicable provision of federal law and cannot serve as the basis to assert a federal civil action against it.  It contends that the appropriate federal statute is 42 U.S.C. § 1983 and that the failure of Plaintiffs to plead the correct statute renders Plaintiffs' Complaint defective and warrants dismissal of Plaintiffs' pleadings.

The APD is correct in that 18 U.S.C. § 242 is a criminal statute that provides for the imposition of a fine, imprisonment, or both; or even a sentence of death in some instances.[1]  As correctly asserted by the APD, the applicable statute that Plaintiffs should have invoked is 42 U.S.C. § 1983, which is a statute that allows a person to file a civil action against one acting under color of law for the deprivation of a right secured by the United States Constitution or federal law.

---

[1] Title 18 U.S.C. § 242 provides as follows:

> Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section of if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

**Memorandum Opinion and Order – Page 14**

Contrary to the APD's assertion, the failure to cite or mention 42 U.S.C. § 1983 does not defeat Plaintiffs' claims under the statute. *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 347 (2014) (holding, "[N]o heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim.") (citation omitted). That a party cites or refers incorrectly to a statute that provides no relief or remedy is not determinative. The question is whether the factual allegations in the complaint state a claim upon which relief can be granted under a proper legal theory, not whether the correct statute is cited. *Id.*

Since Plaintiffs will have to amend their pleadings regarding the APD and sue the City of Arlington or establish that the APD has jural existence, and for purpose of clarification, the court instructs them to cite to 42 U.S.C. § 1983 in their amended pleading to make clear they are suing pursuant to that statute. Further, the court admonishes Plaintiffs that their Complaint does not adequately set forth allegations to show that they have suffered a constitutional injury as a result of a policy of custom of the City of Arlington, which is required when a party sues pursuant to 42 U.S.C. § 1983. *Board of the Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). In this regard, Plaintiffs must set forth sufficient facts for the court to reasonably infer that Juan May's death resulted from an unconstitutional policy or custom of the City of Arlington.

### C.      Andres's Motion to Dismiss

#### 1.      Invocation of 18 U.S.C. § 242

Andres, as did the APD, contends that Plaintiffs' invocation of 18 U.S.C. § 242 renders Plaintiffs' Complaint defective and warrants dismissal of the action. The court disagrees for the reasons set forth in addressing the APD's argument on the same issue. The court will allow Plaintiff to replead and instructs them to plead their claims pursuant to 42 U.S.C § 1983.

**Memorandum Opinion and Order – Page 15**

## 2.      Qualified Immunity

Andres contends that Plaintiffs have not set forth facts sufficient to defeat or overcome his qualified immunity defense.  The court agrees that Plaintiffs' allegations at this juncture do not show that Andres's conduct in shooting Juan May was objectively unreasonable.  Andres has set forth his defense of qualified immunity in his motion to dismiss with some degree of particularity. Although Andres at times takes some of Plaintiffs' allegations out of context, and there are gaps in the sequence of events described by Plaintiffs and Andres, it is incumbent upon Plaintiffs to rebut or negate the defense of qualified immunity, although all reasonable inferences are drawn in their favor.  *Brown v. Callahan*, 623 F.3d at 253.

The facts and circumstances surrounding a shooting by a law enforcement officer are often fact-intensive and fast-moving.  In such instances, the sequence and timing of the participants' conduct are critical to the court's resolution of the qualified immunity issue.  This is one of those cases.  For example, the court needs to know whether Andres "retreated" to his car; whether the fight was over between Andres and May when Andrews headed to his vehicle; or whether May followed after Andres *only* after someone yelled that Andres was going to get a gun.  Also, it is not clear as to when Andres precisely identified himself as a "cop."  Further, Plaintiffs provide no factual allegations as to the proximity of Andres and Juan May when May ran after Andres to keep Andres from obtaining a gun, May's location when Andres's wife remotely unlocked their car and Andres entered the vehicle, or Andres's wife's location when she unlocked the car and her conduct immediately afterwards.  The court also needs more information with respect to what was done and said, when it was done and said, and by whom was it done and said as the situation rapidly unfolded.  As previously stated, at this juncture, Andres has sufficiently pleaded or asserted his qualified immunity defense that a reasonable police officer could have believed that the use of

deadly force against Juan May was objectively reasonable and did not violate clearly established constitutional law.[2]  In coming to this conclusion, the court, of course, disregarded statements made by Andres that some of Plaintiffs' allegations were false and that independent law enforcement agencies investigated the shooting.  For example, Plaintiffs do not concede, as asserted by Andres, that Andres "retreated" to his car.  This is Andres's description or characterization of his actions, as Plaintiffs never used the word "retreat."  The court's role is simply to assess the sufficiency of the pleadings; it does not assess credibility.  The court's analysis also applies equally to any state claim to which Andres could assert official immunity.

---

[2] In asserting facts in support of his qualified immunity defense, Andres alleges the following:

> Accepting the factual allegations in the Complaint, Plaintiffs admit that the fight was started by decedent Juan May punching Sgt. Andres in the face. While Plaintiffs try to justify Patrick May's physical involvement in the fight by claiming (untruthfully) that Patrick May tried to break up the fight, Plaintiffs also concede that Juan May and Patrick May both continued fighting Sgt. Andres when he had fallen to the ground.

> Plaintiffs also concede that Sgt. Andres fled to his car and was inside the car when Juan May physically struggled with him and it was during this time that Sgt. Andres in effect put himself into the role of a Police Officer by, according to Plaintiffs, yelling that he was a cop. It was only after that point that Sgt. Andres fired one shot fatally wounding Juan May.

> What Plaintiffs do not tell the Court is that Sgt. Andres was beaten so savagely that he briefly lost consciousness before he was able to get up off the ground and attempt to escape to his car. Plaintiffs fail to clearly admit that when Sgt. Andres was sitting in his car trying to get away, Juan May continued assaulting and beating him, and when Juan May saw Sgt. Andres holding a gun, Juan May threatened to kill Sgt. Andres. When Sgt. Andres had no choice but to fire his gun to save himself, Juan May was partially inside Sgt. Andres' car, blood from Juan May was found on the inside of Sgt. Andres' car, and gunshot residue was found on Juan May's hand because he was trying to grab and take away Sgt. Andres' gun. Sgt. Andres asserts that under these circumstances which include the facts pled and therefore judicially admitted by Plaintiffs, together with the additional facts asserted by Sgt. Andres, a reasonable Peace Officer could have believed that use of deadly force at that time was lawful and did not violate the clearly established rights of Juan May.

Andres's Mot. to Dismiss 8 (footnote omitted).

**Memorandum Opinion and Order – Page 17**

### D.      Miscellany

### 1.      Punitive Damages

The APD seek dismissal of Plaintiffs' claim for punitive or exemplary damages for failure to state a claim upon which relief can be granted.   A municipality is immune from an award of punitive damages for actions brought under 42 U.S.C. § 1983.   *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).   Although the APD is correct in asserting that an award of punitive damages is not recoverable against a municipality in a § 1983 case, Plaintiffs have not sued the City of Arlington, and the APD does not have jural existence to sue or be sued.   This portion of the APD's motion to dismiss is, therefore, premature.   In light of this clear authority, Plaintiffs should not include a request for punitive or exemplary damages in their § 1983 claim against the City of Arlington when they file their amended pleading.

### 2.      Homicide under State Law

To the extent Plaintiffs purport to assert a cause of action for homicide under Texas law, the claim necessarily fails.   Homicide is a criminal offense under § 19.01 of the Texas Penal Code. The Texas Penal Code "does not create private causes of action."   *A.H. Belo Corp. v. Corcoran*, 52 S.W.3d 375, 379 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (citation omitted); *Spurlock v. Johnson*, 94 S.W.3d 655, 658 (Tex. App.—San Antonio 2002, pet. denied) (citation omitted).   As no civil cause of action exists for violation of a state criminal statute, Plaintiffs have failed to state a claim upon which relief can be granted on this claim.   Plaintiffs will have to replead their claim under the proper state civil statutes or Texas common law.   Insofar as attempting to state a claim under the Texas Penal Code, the court will dismiss with prejudice the "homicide" claim.

### 3.     Intentional Infliction of Emotional Distress ("IIED")

Andres contends that Plaintiffs may be asserting "a mental anguish cause of action."  Sgt. Andres' Mot. to Dismiss 6.    Although Plaintiffs' pleadings are not a model of pellucid draftsmanship, the court, liberally construing Plaintiffs' Complaint, determines that Plaintiffs have not pleaded a claim for IIED.  Plaintiffs pleaded mental anguish only as a category of damages, not as an independent claim or cause of action for IIED.  Accordingly, there is no claim to dismiss.

### E.     Andres's Motion to Stay Discovery

Andres contends that all discovery should be stayed because Plaintiffs have not pleaded facts to overcome his qualified immunity defense.  The court agrees.  "One of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive."  *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (citation omitted). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (citation omitted).  In other words, discovery cannot proceed "until the district court *first* finds that the plaintiff's pleadings which, if true, would overcome the defense of qualified immunity."  *Wicks v. Mississippi State Emp't Servs.*, 41 F.3d 991, 994 (5th Cir. 1995) (footnote and citations omitted).  As the court has concluded that Plaintiffs' Complaint does not set forth allegations sufficient to overcome or defeat Andres's qualified immunity defense, discovery is premature, should not take place, and is hereby **stayed** until further order of the court.

### F.     Motion for Leave to Supplement Briefing

Andres seeks to supplement his brief in light of the Supreme Court's decision in *White v. Pauly*, 137 S. Ct. 548, 550 (2017).  *White* is simply a restatement of prior Supreme Court rulings

**Memorandum Opinion and Order – Page 19**

on qualified immunity and the use of force by law enforcement officers. *White* does not set forth any new law, and it is only a reminder to courts as to how they are to analyze qualified immunity in the context of cases alleging a use of excessive force. The court is well aware of how it is to determine whether a police officer is entitled to qualified immunity, and the *White* case does little, if anything, to aid the court in performing its responsibility.

As previously stated, the resolution of the issue of qualified immunity often involves a fact-intensive inquiry by the court, especially in cases involving claims regarding the use of excessive force. In two recent shooting cases involving qualified immunity in the context of summary judgment motions, the Supreme Court reached *different* results. In *White*, the court vacated and remanded the lower courts' denial of qualified immunity to the police officer, while in *Tolan v. Cotton*, 134 S. Ct. 1861, 1868 (2014), the court vacated and remanded the lower courts' grant of summary judgment in favor of the officer who shot the plaintiff. The court cites these cases to underscore that the resolution of qualified immunity is uniquely confined to the allegations of a plaintiff's complaint or the evidence developed at the summary judgment stage. The court will deny the motion for leave to supplement. Depending on what ultimately is alleged in the amended pleading, Andres may or may not be entitled to qualified immunity.

## IV.   Conclusion

For the reasons stated herein, the court **grants,** to the extent herein stated,  Defendant City of Arlington Police Department's Motion to Dismiss under Rule 12(b)(1) and 12(b)(6); Defendant Sgt. Thedrick Andres' Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) and Alternative Request That Plaintiffs Reply to His Immunity; and Defendant Sgt. Andres' Motion to Stay Discovery. All discovery is **stayed** until further order of the court. The court **denies** Defendant Sgt. Thedrick

Andres' Motion for Leave to Supplement Briefing on Motion to Dismiss.  The court **dismisses with prejudice** Plaintiffs' state law claim of "homicide."

Rather than dismiss this action outright or require Plaintiffs to file a reply, the court **allows** them the opportunity to file an amended pleading.  An amended pleading will accomplish the same objective as a reply.  Moreover, the court prefers to examine one document when it is determining the sufficiency of the pleadings.  The court directs Plaintiffs to file an amended pleading and address the deficiencies that it herein identified by **February 28, 2016**.  Failure to plead in accordance with the standards herein set forth may result in dismissal for failure to prosecute or comply with a court order pursuant to Federal Rule of Civil Procedure 41(b) of the Federal Rules of Civil Procedure, or dismissal with prejudice pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  Defendants may file a second motion to dismiss if they have adequate grounds that the pleadings are deficient.

**It is so ordered** this 7th day of February, 2017.

Sam A. Lindsay
United States District Judge

**Memorandum Opinion and Order – Page 21**