**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **JORDAN MAY, JASMINE MAY, and** | § | |
| **AVA MAY as next of kin of Juan O'Neil** | § | |
| **May, decedent; and JINDIA MAY** | § | |
| **BLUNT, individually and as** | § | |
| **representative of the estate of Juan** | § | |
| **O'Neil May, deceased,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. **3:16-CV-1674-L** |
| | § | |
| **CITY OF ARLINGTON, TEXAS, a** | § | |
| **municipality; and THEDRICK** | § | |
| **ANDRES, individually and as a Police** | § | |
| **Officer for the City of Arlington,** | § | |
| | § | |
| Defendants. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the court are Thedrick Andres' Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 18), filed March 31, 2017; and Defendant City of Arlington's Second Motion to Dismiss Under Rules 12(b)(1) and 12(b)(6) (Doc. 20), filed March 31, 2017. No response was filed with respect to either motion; however, the court held a hearing on the motions on October 25, 2017. After careful consideration of the motions, briefs, pleadings, arguments of counsel, and applicable law, the court **grants in part** and **denies in part** Thedrick Andres' Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 18); and **grants in part** and **denies in part** Defendant City of Arlington's Second Motion to Dismiss Under Rules 12(b)(1) and 12(b)(6) (Doc. 20).

## I. Background

After the initial pleading was filed, several motions to dismiss were filed. As a result of the motions, certain claims were dismissed, and the court ordered Plaintiffs to replead and file an

amended complaint.  Specifically, to the extent set forth in its Memorandum Opinion and Order, filed February 17, 2017 (Doc. 12), the court granted Defendant City of Arlington Police Department's Motion to Dismiss under Rule 12(b)(1) and 12(b)(6), Defendant Sgt. Thedrick Andres' Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) and Alternative Request that Plaintiffs Reply to His Immunity,[1] and Defendant Sgt. Andres' Motion to Stay Discovery; stayed all discovery until further order of the court; denied Defendant Sgt. Thedrick Andres' Motion for Leave to Supplement Briefing on Motion to Dismiss; and dismissed with prejudice Plaintiffs' state law claim of "homicide" and the action against the Arlington Police Department.  Rather than dismiss the entire action, the court ordered that Plaintiffs be allowed an opportunity to amend their pleadings.  As a result of the order and an agreed extension between the parties, Plaintiffs' First Amended Original Complaint ("Amended Complaint") was filed on March 17, 2017.  Two weeks later, the referenced motions to dismiss were filed.

In the Amended Complaint, Plaintiffs (Jordan May, Jasmine May, and Ava May as next of kin of Juan O'Neil May, decedent; and Jindia May Blunt,[2] individually and as representative of the estate of Juan May, deceased), assert claims against the City of Arlington (the "City") and Thedrick Andres ("Andres") as a result of the shooting death of Juan O'Neil May.  Specifically, Plaintiffs assert claims against the City and Andres under the Fourth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983 ("§ 1983"); claims under the Texas Tort Claims Act; claims for wrongful death under Texas law; a survival claim under Texas law; a civil rights claim under § 1983 for violation of familial relationship; claims for intentional infliction of

---

[1] Rather than require Plaintiffs to file a reply, the court ordered Plaintiffs to file an amended pleading.

[2] There is some question whether the correct spelling of this party's last name is spelled "Blunt" or "Blount."  Since the Amended Complaint uses "Blunt," the court will use that spelling.

emotional distress and assault.  Plaintiffs seek compensatory damages, exemplary and punitive damages, costs of court and attorney's fees.

The City and Andres have both filed second motions to dismiss.  First, the City contends that Plaintiffs failed to allege sufficiently that a policy or custom of the City caused any of them to be deprived of a constitutional right.  Second, the City contends it is immune from the intentional torts under the Texas Tort Claims Act.  Third, the City contends that Plaintiffs' claims for assault under § 22.01 of the Texas Penal Code and the tort of intentional infliction of emotional distress should be dismissed with prejudice for lack of jurisdiction.[3]  Fourth, the City contends that Plaintiffs' claims for exemplary and punitive damages under federal and state law should be dismissed with prejudice for lack of jurisdiction.  Finally, the City contends that Jindia Blunt, sister of Juan May, does not have standing to bring any claims in her individual capacity and that any claim in such capacity should be dismissed for lack of jurisdiction.

Andres contends that Plaintiffs' Amended Complaint does not address the shortcomings previously identified by the court and that it does not provide specific allegations to defeat Andres's qualified immunity defense.  Andres contends that Plaintiffs' Fourth Amendment claim for excessive force should be dismissed because it does not meet the pleading requirements set forth in *Twombly* and *Iqbal*.  Andres also contends that Plaintiffs' claims under Texas Tort Claims Act are barred against him because they also chose to sue the City and their claims are barred by an immediate, irrevocable statutory election pursuant to Texas Civil Practice and Remedies Code, § 101.106.  He further contends that the claims for intentional infliction of emotional distress fail

---

[3] Although the City correctly states that the issue of jurisdiction should be first addressed by the court, it proceeds to argue whether facts have been sufficiently alleged to state a claim upon which relief can be granted against the City.  The court believes that the more appropriate vehicle to address the City's motion is Federal Rule of Civil Procedure 12(b)(6), rather than Rule 12(b)(1).

because it is a "gap-filler" and there is no gap to fill in this case. He also contends that the § 1983 claim for violation of familial relationship should be dismissed. Andres requests that Plaintiffs be required to amend and replead, and address Andres's qualified immunity defense by submitting a Rule 7 Reply.

As the court stated earlier, Plaintiffs filed no response to the motions to dismiss; however, the hearing held on October 25, 2017, assists the court in ruling on the motions. The court will first address the City's motion to dismiss, and then it will proceed to address Andres's motion.

## II.     The City's Motion to Dismiss

### A.     Municipal Liability Under 42 U.S.C. § 1983

A governmental entity can be sued and subjected to monetary damages and injunctive relief under 42 U.S.C. § 1983 only if its official policy or custom causes a person to be deprived of a federally protected right. *Board of the Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A governmental entity *cannot* be liable for civil rights violations under a theory of respondeat superior or vicarious liability. *Id.*; *see also Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979). Official policy is defined as:

> 1.     A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [city] lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2.     A persistent, widespread practice of [city] officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents [city] policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the [city] or to an official to whom that body had delegated policy-making authority.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (*en banc*); *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (*en banc*). For purposes of a motion to dismiss under Rule

12(b)(6), a plaintiff must plead facts from which the court can reasonably infer that the "challenged policy was promulgated or ratified by the city's policymaker." *Groden v. City of Dallas, Texas*, 826 F.3d 280, 285 (5th Cir. 2016). "[C]ourts should not grant motions to dismiss for [the] fail[ure] to plead the specific identity of the policymaker." *Id.* (citing *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346 (2014)).

The ultimate question in deciding the sufficiency of a complaint is whether a person has alleged facts to show that a policymaker promulgated or ratified an unconstitutional policy that resulted in injury to him or her. Although a plaintiff need not offer proof of his or her allegations at the pleading stage, a plaintiff "must plead facts that plausibly support each element of § 1983 municipal liability." *Peña v. City of Rio Grande, Tex.*, 879 F.3d 613, 621 (5th Cir. 2018) (citation omitted). In other words, a plaintiff must set forth facts, or those from which the court can reasonably infer, that: "(1) an official policy; (2) promulgated by the municipal policymaker; (3) was the moving force behind the violation of a constitutional right." *Hicks-Fields v. Harris Cty.*, 860 F.3d 803, 808 (5th Cir. 2017) (footnote and citations omitted). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citations omitted).

To defeat "a motion to dismiss, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'" *Balle v. Nueces Cty. Tex.*, 690 F. App'x 847, 852 (5th Cir. 2017) (quoting *Spiller v. City of Tex. City Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)). In other words, the pleadings are adequate with respect to a section 1983 claim against a city when they set forth "specific factual allegations that allow a court to reasonably infer that a policy or practice exists and that the alleged

policy or practice was the moving force" for the constitutional violation asserted. *Id.* (citation omitted). Although *Spiller* is over twenty years old, its holding that allegations of an allegedly unconstitutional policy or custom of a local government may not be stated conclusorily but must set forth specific facts is still solid law, and it was recently cited with approval by the Fifth Circuit in *Peña*, 879 F.3d at 622. If a complaint does not meet the standard set forth in *Spiller*, an action cannot "proceed beyond the pleading stage." *Peña*, 879 F.3d at 622.

## B. Rule 12(b)(6) - Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted). Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or

legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

### C.       Discussion

#### 1.       Plaintiffs' Section 1983 Claims Against the City

The City contends that Plaintiffs' pleadings are too conclusory and speculative to state a claim upon which relief can be granted. The essence of the City's contentions is that sufficient facts have not been pleaded in the Amended Complaint as required by Supreme Court and Fifth Circuit authority for this court to reasonably infer that a City policy or custom was the moving force behind any constitutional injury Plaintiffs may have suffered.

In resolving this issue, the court now sets forth the relevant allegations of the Amended Complaint regarding municipal liability. Plaintiffs allege as follows:

22.     This incident [the shooting of Juan May], coupled with the recent firing of Arlington Police Officer Brad Miller, suggests that there is a pattern of misconduct being engaged in by certain law enforcement officers in the City of Arlington Police Department that seek to deprive a segment of our community of their constitutional rights. This intentional and reckless disregard for human life lies far below the

stated brand of "excellent service," suggested by the City of Arlington Police Department.

. . .

24.     As a result of the pre-existing customs, policies, patterns and/or practices of such abuses by members of Defendant, CITY OF ARLINGTON Police Department, decedent and Plaintiffs were subjected to the violation of their constitutional rights as alleged herein.

. . .

## SECOND CAUSE OF ACTION
### (Municipal Liability)
### (42 U.S.C. § 1983)

53.     Plaintiff re-alleges and incorporates by reference herein paragraphs 1 through 52 of this complaint.

54.     Plaintiffs plead that Juan May's constitutional rights were violated when he was shot and killed by Officer Andres. The Plaintiffs' injuries directly resulted from Officer Andres' excessive use of deadly force in shooting and killing Juan May.

55.     The City of Arlington is also liable under 42 U.S.C. § 1983 for failing to supervise and train its police officers, and for overlooking and covering up officer misconduct. In addition, the City had a general policy, pattern and/or practice of not disciplining police officers for their conduct, thereby sanctioning the police officers' actions, which amounted to a departmental policy of overlooking constitutional violations. The City's failure to supervise and train its police officers, and the City's willful blindness towards the constitutional violations of its employees, constitute gross negligence and/or deliberate and conscious indifference to people's rights including the right to free from unreasonable search and seizure and the rights conveyed to Plaintiffs under the Texas Wrongful Death Statute as applied through 42 U.S.C. § 1983 and 1988.

56.     Additionally, municipalities may be held liable under 42 U.S.C. § 1983 for constitutional torts that are committed pursuant to a policy, procedure, practice, or custom of the municipality. Even if the City's practice of overlooking constitutional torts was not authorized by an officially adopted policy, the practice may be so common and well-settled that it fairly represents official policy. *See Bd. of County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 404 (1997).

57.     In the present case, the City's formal and informal actions in overlooking and/or tacitly encouraging police misconduct through other officers, the Internal Affairs Division, the past and present Arlington Police Chiefs, as well as its past and present Mayors and City Councils reflect a policy, practice custom and

procedure authorizing and allowing the use of excessive force that violated the civil rights of Juan May. Consequently, the City is liable for harm caused to others, such as Plaintiffs, as a result of its policies, practices, customs and procedures.

58.     Defendant City is liable for the constitutional torts of Officer Andres because the City sanctioned the following customs, practices and policies:

        a.      Using excessive force, and often times deadly force, to carry out otherwise routine arrests or stops;

        b.      Using deadly force when such force is not necessary or permitted by law;

        c.      Ignoring the serious need for training and supervision of its officers in regards to the use of force;

        d.      Failing to discipline those persons whom are found to have engaged in the use of excessive force upon those entrusted to their care and/or under their control;

        e.      Failing to adequately supervise and/or observe its officers;

        f.      Failing to adequately train officers regarding the availability of alternative means of detaining persons other than the use of force or deadly force;

        g.      Failing to discharge officers who have shown a pattern or practice of using excessive force; and

        h.      Adopting a practice whereby officers who are unfit for peace officer duties, as shown by prior actions in the line of duty, are allowed to retain their positions.

59.     Although Officer Andres was an off-duty police officer the night of the shooting, at the time that Officer Andres shot and killed Juan May, he had announced himself immediately prior to the shooting as a police officer by stating that he was "a cop" as he retrieved his service weapon. Due to the events that le[]d to Officer Andres invoking his official police duties, Officer Andres acted pursuant to official City of Arlington policy, practice, custom and procedures of overlooking and/or authorizing police officers' excessive use of force by shooting and killing Juan May. *See Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 659 (1978).

60.     Although the shooting occurred in the City of Duncanville and was investigated by the Duncanville Police Department, the Arlington Police Department also responded and assisted in the investigation. The shooting and killing of Juan May was not treated or investigated as a shooting between civilians.

It was treated and investigated by both the Duncanville and Arlington Police Departments as a police officer involved shooting. Responding officers immediately identified Officer Andres as a police officer and treated him as such. He was not arrested and other witnesses were not questioned until long after Officer Andres had provided his own account as to what had occurred.

61.     As previously stated, the presence of the Arlington Police Department at the scene of the incident unquestionably had an impact on the way that the Duncanville Police Department handled the investigation of Officer Andres' actions. It was treated as though a police officer was involved in the shooting and his actions were viewed in a light most favorable to Officer Andres. That impact alone—*as Andres' statement that he was "a cop" alone, and the use of his service firearm alone*—may not lend assurance that Officer Andres was acting under the color of law. But with all factors aggregately combined, under the color of law he did act.

62.     Thus, the City's policy of overlooking and cover up of police brutality was a direct cause of Plaintiff's injuries. In particular, the City's policy caused Juan May to be deprived of his constitutional rights to be free from unlawful seizures and objectively unreasonable force under the Fourth and Fourteenth Amendments and his rights taken from the Texas Wrongful Death Statute as applied through 42 U.S.C. § 1983 and 1988.

### Failure to Train a Single Police Officer

63.     A City may be held liable for its failure to train a single police officer when the officer's acts were so egregious that the City should have had clear warning that the particular officer posed a danger to citizens. *See Pineda v. City of Houston,* 124 F. Supp. 2d 1057, 1068 (S.D. Tex. 2000).

64.     With respect to Officer Andres, the need for additional or different training was obvious. Defendant Andres had a history of unjustifiable and excessive use of force. Pursuant to an open records request, it has been noted that Officer Andres was involved in a road rage incident with a civilian in Coppell, Texas, wherein Officer Andres pulled a handgun on a civilian in another vehicle, then called 911 to report that he felt his life was in danger. He also stated that the civilian driver displayed a hatchet, which turned out to be an ice-scraper.

65.     Additional information has been obtained showing that Officer Andres had complaints filed against him for excessive force while working as a police officer for the New Orleans Police Department prior to employment with the Arlington Police Department.

66.     The City of Arlington knew that Officer Andres was likely to engage in other acts of excessive force, yet the City did nothing. By failing to discipline, supervise or train Defendant Andres, the City authorized or ratified Officer Andres'

wrongful acts both by acceptance of acts prior to and including those that caused Juan May's death.

67.     The City's acts and omissions, when viewed objectively, involved an extreme degree of risk, considering the probability and magnitude of harm to others. The City had actual subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of others including Juan May and the Plaintiffs.

68.     Thus, in light of the particular risk posed by Officer Andres, the City's failure to train Defendant Andres constitutes gross negligence and/or deliberate and conscious indifference to the rights, safety and welfare of others, including Juan May and Plaintiffs.

Pls.' First Amended Compl. ¶¶ 22, 24, 53-68.

The court cited the relevant portions of the Amended Complaint regarding municipal liability to underscore the paucity of specific allegations. The allegations regarding municipal policy are extremely conclusory and short on specificity. Conclusory statements simply are not specific facts, and the description of the allegedly unconstitutional policies or customs of the City and their relationship to the underlying constitutional violation are not specific. Plaintiffs allege that the City has a policy or custom of failing to train, discipline, and supervise its police officers regarding the use of excessive and deadly force. Plaintiffs also contend that the City has a policy or custom of allowing police officers who are unfit to retain their positions with the City Police Department. Plaintiffs contend that the City's alleged policy or custom of overlooking and covering up police brutality, as well as the other alleged deficiencies in training, supervision, discipline, and retention, was a direct cause of their injuries, and that the aforementioned policies and customs of the City caused Juan May to be deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

As stated before, Plaintiffs' allegations are quite general and conclusory, and do not meet the pleading requirements of *Twombly* and *Iqbal*, or what is necessary to state a claim for municipal

liability. The allegations against the City are no more than a formulaic recital of some of the elements to establish municipal liability. To underscore the conclusory nature of Plaintiffs' allegations, the court provides the following example: A person may say that another person is drunk or intoxicated, but, without more, this is merely a conclusion and without the underlying facts to support the conclusion, a determination cannot be made with respect to whether there is a reasonable belief to infer that the person may be intoxicated. On the other hand, if the person states that the other person smelled of alcohol, had glassy and red eyes, had slurred speech, walked unsteadily or staggered, had poor coordination or reacted slowly, and kept repeating himself, there would be underlying facts or allegations for the court to reasonably infer that such person was intoxicated. Plaintiffs' allegations regarding the alleged policies or customs of the City do not rise above the speculative level. Given the deficiencies in the allegations against the City, the court cannot reasonably infer that it would be liable to Plaintiffs for the misconduct alleged in the Amended Complaint.

Plaintiffs as part of their pleadings assert that the City can be liable under the single-incident principle. This principle comes from *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989). Plaintiffs allege that the City failed to train Andres and the need for additional training was obvious. They cite an incident involving Andres and a civilian and allege that Andres had complaints filed against him for excessive force when he worked for the City of New Orleans Police Department. The single-incident exception is usually "reserved for those cases in which the government actor was provided no training whatsoever." *Peña*, 879 F.3d at 624. Plaintiffs' allegations fall woefully short of coming within the ambit of this narrow exception.

At the hearing, Plaintiffs essentially acknowledged that their pleadings regarding policy and custom were deficient. The court will allow Plaintiffs *one last time* to plead a case of

municipal liability against the City. To the extent that discovery may have been requested regarding municipal liability, the court **denies** such request. The court denies discovery at this stage because, before proceeding to discovery, a plaintiff must plead enough facts to state a plausible claim for relief. *See Iqbal*, 556 U.S. at 678 (A complaint must provide "factual content" that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). As the Court stated in *Iqbal*, Federal Rule of Civil Procedure 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. Further, pretrial discovery through public information requests to the City could have been used as a source to obtain information on police officers of the City who have been involved in shootings, used excessive force, or were disciplined for the inappropriate use of force against a citizen.

### 2. Plaintiffs' Intentional Tort Claims Against the City

At the hearing held on October 25, 2017, Plaintiffs conceded that the intentional torts against the City were not viable in light of § 101.057(2) of the Texas Tort Claims Act. The court agrees. This provision of the Texas Tort Claims Act does not apply to any claim "arising out of assault, battery, false imprisonment, or any other intentional tort . . . ." *Id.* Assault and intentional infliction of emotional distress are intentional torts. Accordingly, the court **dismisses with prejudice** Plaintiffs' claims of intentional infliction of emotional distress and assault against the City.

### 3. Exemplary and Punitive Damages

The City contends that exemplary or punitive damages are not recoverable against it. The court agrees. A municipality is immune from an award of punitive damages for actions brought under § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Likewise, a

plaintiff is barred from recovering exemplary damages against a municipality on state law claims. Tex. Civ. Prac. & Rem. Code, § 101.024; *Kuhl v. City of Garland*, 910 S.W.2d 929, 931 (Tex.) (stating that "the Texas Tort Claims Act . . . prohibits punitive damages."). For these reasons, exemplary and punitive damages against the City are barred with respect to Plaintiffs' federal and state claims, and the court **dismisses with prejudice** Plaintiffs' claims for exemplary and punitive damages against the City.

### 4. Standing of Jindia Blunt to Bring Claims in Her Individual Capacity

The City contends that Jindia Blunt, the surviving sister of Juan May, lacks standing to bring a wrongful death claim in her individual capacity, and that the court must look to state law as to whom may bring a wrongful death or survival claim pursuant to § 1983. The court agrees.

With respect to whom has standing to bring a wrongful death claim, federal courts look to state law. *Aguillard v. McGowen*, 207 F.3d 226, 231 (5th Cir. 2000). "The Texas Wrongful Death and Survival Statutes, Tex. Civ. Prac. & Rem. Code §§ 71.004 and 71.021, set forth the parties who can bring suit." *Id.* Section 71.004(a), (b) provides:

(a) An action to recover damages as provided by this subchapter is for the exclusive benefit of the surviving spouse, children, and parents of the deceased.

(b) The surviving spouse, children, and parents of the deceased may bring the action or one or more of those individuals may bring the action for the benefit of all.

Section 71.021 provides:

(a) A cause of action for personal injury to the health, reputation, or person of an injured person does not abate because of the death of the injured person or because of the death of a person liable for the injury.

(b) A personal injury action survives to and in favor of the heirs, legal representatives, and estate of the injured person. The action survives against the liable person and the person's legal representatives.

(c)  The suit may be instituted and prosecuted as if the liable person were alive.

A sibling is not one of the persons authorized to bring a wrongful death claim in her individual capacity under the statute.  *Aguillard*, 207 F.3d at 231.  Accordingly, Jindia Blunt may not sue in her individual capacity and, to the extent she does, the wrongful death claim in her individual capacity is **dismissed with prejudice** for failure to state a claim upon which relief can be granted.

## III.     Andres's Motion to Dismiss

### A.      Qualified Immunity

#### 1.      Federal

Government officials who perform discretionary functions are entitled to the defense of qualified immunity, which shields them from suit as well as liability for civil damages, if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A defendant official must affirmatively plead the defense of qualified immunity.  *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  Andres has asserted this defense in his motion to dismiss and answer.

In deciding a dispositive motion that raises the defense of qualified immunity, the Supreme Court initially set forth a mandatory two-part inquiry for determining whether a government official was entitled to qualified immunity.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Under *Saucier*, a court must determine first whether the facts alleged or shown are sufficient to make out a violation of a constitutional or federal statutory right.  If the record sets forth or establishes no violation, no further inquiry is necessary.  On the other hand, if the plaintiff sufficiently pleads or establishes that a violation could be made out, the court must determine whether the right at issue was clearly established at the time of the government official's alleged misconduct.  *Id.*  The Court relaxed this mandatory sequence in *Pearson v. Callahan*, 555 U.S. 223 (2009), and stated,

"[W]hile the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory," and judges "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. The second prong of the test "is better understood as two separate inquiries: whether the allegedly violated constitutional right[] [was] clearly established at the time of the incident; and if so, whether the conduct of the defendant[] [official] was objectively unreasonable in light of that then clearly established law." *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017) (quoting *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (internal quotation marks and citations omitted)); *see also Evans v. Ball*, 168 F.3d 856, 860 (5th Cir. 1999); *Hare v. City of Corinth,* 135 F.3d 320, 326 (5th Cir. 1998); *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995).

Ordinarily, one who pleads an affirmative defense must establish his entitlement to such defense. In the context of qualified immunity, however, this burden varies from the norm. In this circuit, the rule is as follows:

> Where . . . [a] defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff then has the burden to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law. We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.

*Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997) (internal quotations and citations omitted); *see also Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

A right is "clearly established" only when its contours are sufficiently clear that a reasonable public official would have realized or understood that his conduct violated the right in issue, not merely that the conduct was otherwise improper. *See Anderson v. Creighton,* 483 U.S. 635, 640 (1987); *Foster v. City of Lake Jackson*, 28 F.3d 425, 429 (5th Cir. 1994). Thus, the right

must not only be clearly established in an abstract sense but in a more particularized sense so that it is apparent to the official that his actions [what he is doing] are unlawful in light of pre-existing law. *Anderson v. Creighton*, 483 U.S. at 640; *Stefanoff v. Hays County*, 154 F.3d 523, 525 (5th Cir. 1998); and *Pierce v. Smith*, 117 F.3d at 871.

In *Anderson*, 483 U.S. at 641, the Court refined the qualified immunity standard and held that the relevant question is whether a reasonable officer or public official *could have believed* that his conduct was lawful in light of clearly established law and the information possessed by him. If public officials or officers of "reasonable competence could disagree [on whether the conduct is legal], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (*citing Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)). Qualified immunity is designed to protect from civil liability "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. at 341. Conversely, an official's conduct is not protected by qualified immunity if, in light of clearly established pre-existing law, it was apparent the conduct, when undertaken, would be a violation of the right at issue. *Foster*, 28 F.3d at 429. To preclude qualified immunity, it is not necessary for a plaintiff to establish that "the [specific] action in question has previously been held unlawful." *Anderson*, 483 U.S. at 640. For an official, however, to surrender qualified immunity, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law *in the circumstances*." *Pierce v. Smith*, 117 F.3d at 882 (emphasis in original and citation omitted); and *Stefanoff v. Hays County*, 154 F.3d at 525. Stated differently, while the law does not require a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011) (citations omitted).

In analyzing qualified immunity claims, the Supreme Court has "repeatedly told courts …
to not define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S. Ct.
305, 308 (2015) (citation omitted). Pursuant to *Mullenix*, courts must consider "whether the
violative nature of *particular* conduct is clearly established" and must undertake this inquiry "in
light of the specific context of the case, not as a broad general proposition." *Id.* (citations and
internal quotations marks omitted).

To defeat or overcome an official's qualified immunity defense, a plaintiff's complaint
must allege specific facts that, if proved, would show that the official's conduct violated clearly
established constitutional or statutory rights. In cases involving claims of qualified immunity,
often it is appropriate to require a plaintiff to file a detailed reply to address the plea of qualified
immunity. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc). "[T]he reply must be
tailored to the assertion of qualified immunity and fairly engage its allegations. A defendant has
an incentive to plead his defense with some particularity because it has the practical effect of
requiring particularity in the reply." *Id.* A plaintiff generally must be given the opportunity to
reply with greater specificity in such cases before the court rules on a defendant's dispositive
motion. *Todd v. Hawk*, 72 F.3d 443, 446 (5th Cir. 1996).

A reply, however, is only required when the claims in the complaint are not supported
"with sufficient precision and factual specificity to raise a genuine issue as to the illegality of [a]
defendant's conduct at the time of the alleged acts." *Schultea*, 47 F.3d at 1434. If "the pleadings
on their face show an unreasonable violation of a clearly established constitutional right," the
assertion of a qualified immunity defense is insufficient to sustain a Rule 12(b)(6) motion to
dismiss. *Shipp v. McMahon,* 234 F.3d 907, 912 (5th Cir. 2000), *overruled in part on other grounds
by McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002) (en banc).

### 2. Texas

Texas qualified or official immunity "is similar [to federal qualified immunity], but focuses solely on the objective legal reasonableness of the officer's conduct. Whether the allegedly violated right was 'clearly established' is irrelevant." *Shaboon v. Duncan*, 252 F.3d 722, 729 (5th Cir. 2001) (citation omitted). Under Texas law, "[g]overnment employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." *City of Lancaster v. Chambers*, 833 S.W.2d 650, 653 (Tex. 1994). The "good faith" element is essentially "the same as the federal 'objective legal reasonableness' test." *Shaboon*, 252 F.3d at 735.

### B. Excessive Force

A plaintiff's claim for excessive force must be determined according to Fourth Amendment standards because "*all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original). Determining whether the force used was reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396 (citation omitted). The issue of reasonableness centers on whether the officer's actions are "objectively reasonable" in light of the facts and circumstances with which he is faced, without regard to the officer's underlying intent or motivation. *Id*. at 397 (citation omitted). Whether the use of force is reasonable "must be judged from the perspective of a reasonable officer on the scene, rather than

the 20/20 vision of hindsight." *Id*. at 396. In applying *Graham*, the Fifth Circuit uses a three-part test that requires a plaintiff to show "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016) (citation omitted); *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005) (citation omitted). Injury can be one that is physical or psychological. *Ikerd v Blair*, 101 F. 3d 430, 434 n.9 (5th Cir. 1996).

### C. Discussion

#### 1. Plaintiffs' Excessive Force Claim and Qualified Immunity

While Plaintiffs' Amended Complaint cured some of the deficiencies pointed out in the court's Memorandum Opinion and Order (Doc. 12) filed February 7, 2017, there are matters that need to be set out with more specificity. The court will give Plaintiffs *one last time* to plead as instructed so that the court can adequately address the issues of excessive force and qualified immunity. The court has set out these standards in punctilious detail, and Plaintiffs would do well to follow these standards in repleading. In addition to what the court addressed in its earlier opinion on pages 16 and 17, Plaintiffs are to set forth facts as to why the force used was clearly excessive to the need and why the excessiveness was clearly unreasonable. Also, Plaintiffs are directed to set forth facts from which the court can reasonably infer that the force used by Andres was objectively unreasonable. Once again, of critical importance to the court is what happened after Andres got up and ran toward his vehicle. The court needs a step-by-step account of what was done and said by Andres, Juan May, and any other witnesses, including Andres's wife, during the brief span of time that Andres got up from the ground, ran to his car, and shot Juan May. The court also wants to know approximately how much time elapsed from the time the fight was over

until the shooting. Everything that the court set out on pages 16 and 17 of its opinion filed February 7, 2017, must be addressed and is hereby incorporated into this opinion as if repeated verbatim.

There is no question that Juan May suffered an injury. What cannot be determined at this juncture, as specific allegations are lacking, is whether the force was clearly excessive and clearly unreasonable. From a qualified immunity standpoint, facts must be pleaded from which the court can reasonably infer that Andres's conduct was objectively unreasonable.

Andres requests the court to order Plaintiffs to file a reply and address his immunity allegations as set out in his Answer, which are contained in paragraphs 3.03, 3.05, 3.07, 3.08, 3.11, and 3.12. The court declines to grant this request. It is not incumbent upon Plaintiffs to accept Andres's narrative of the facts. The specificity of Plaintiffs' pleadings and the reasonable inferences that can be drawn from the pleadings determines whether facts have been sufficiently alleged to state a claim upon which relief can be granted and whether those allegations are sufficient to overcome or defeat Andres's entitlement to qualified immunity. The court will limit itself to what is pleaded and will disregard any "spin" or mischaracterization as to what is contained in the pleadings. Likewise, the court will not make any credibility assessments or entertain argument that something alleged is false or omitted. Plaintiffs are the masters of their pleadings, and the pleadings will rise or fall on the standards herein enunciated. While the court will require Plaintiffs to file an amended pleading, it will not require the filing of a reply. Whether Plaintiffs file a reply is left to the discretion of the court. *Schultea*, 47 F.3d at 1433-34. As *Schultea* aptly states, "First, the district court must insist that a plaintiff suing a public official file a short and plain statement of his complaint, a statement that rests on more than conclusions alone." *Id.* at 1433. This is precisely what the court is doing by requiring Plaintiffs to replead. Frankly, a well

pleaded complaint can be more helpful to the court deciding the issue of qualified immunity than a reply.

2. State Law Claims of Assault and Intentional Infliction of Emotional Distress against Andres

The court agrees with Andres, for the reasons set forth by him on pages 14 and 15 of his brief that the state law claims against him must be dismissed pursuant to the Texas Civil Practice and Remedies Code § 101.106(a) because of the irrevocable election of remedies provision contained in this statute. Accordingly, Plaintiffs' claims of assault and intentional infliction of emotional distress against Andres are hereby **dismissed with prejudice.**

Further, Plaintiffs' claim for intentional infliction of emotional distress fails for another reason. The elements of intentional infliction of emotional distress are: "(1) the defendant acted intentionally or recklessly; (2) its conduct was extreme and outrageous; (3) its actions caused the plaintiff emotional distress; and (4) the emotional distress was severe." *Hersh v. Tatum*, 526 S.W.3d 462, 468 (Tex. 2017) (citing *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006)). Intentional infliction of emotional distress was "judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffman–LaRoche, Inc. v. Zeltwanger,* 144 S.W.3d 438, 447 (Tex. 2004) (citation omitted). Because intentional infliction of emotional distress is a "gap-filler" tort, a plaintiff, in addition to the foregoing elements, must show or plead that there are no alternative causes of action that would provide a remedy for the severe emotional distress caused by a defendant's conduct. *Kroger Tex. L.P.,* 216 S.W.3d at 796; *Creditwatch, Inc. v. Jackson,* 157 S.W.3d 814, 816 (Tex. 2005); *Hoffman–La Roche,* 144 S.W.3d at 447. If there is an independent set of facts that would support a claim for intentional infliction of emotional distress, the claim is not barred. *Hoffman–*

*La Roche,* 144 S.W.3d at 450.  On the other hand, if a plaintiff's intentional infliction of emotional distress claim is based on another tort, he cannot maintain an action for such claim, regardless of whether he chooses to assert the alternative claim, succeeds on the alternative claim, or the alternative claim is barred.  *Id.* at 447-48.  In this action, Plaintiffs federal civil rights claim provides a remedy for Plaintiffs, and, therefore, the claim for intentional infliction of emotional distress is barred.

### 3.    Deprivation of a Familial Relationship

Andres contends Plaintiffs make no allegation that any of them was present when Juan May was killed or that they contemporaneously experienced the incident.  Andres urges the court to dismiss any claim based on an alleged deprivation of familial relationship.  *Grandstaff v. City of Borger, Texas,* 767 F.2d 161, 172 (5th Cir. 1985), appears to support Andres's argument.  Plaintiffs are to address this in their amended pleading if they believe such claim is still viable under § 1983; otherwise they are directed to not include it in their amended pleading.  The court declines to rule on this claim at this time.

### 4.    Stay of Discovery

Andres contends that all discovery should be stayed because Plaintiffs have not pleaded facts to overcome his qualified immunity defense.  "One of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (citation omitted). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (citation omitted).  In other words, discovery cannot proceed "until the district court *first* finds that the plaintiff's pleadings assert facts which, if true, would overcome

the defense of qualified immunity." *Wicks v. Mississippi State Emp't Servs.*, 41 F.3d 991, 994 (5th Cir. 1995) (footnote and citations omitted). If a reply or amended pleading is filed with the requisite specificity, and the "court remains unable to rule on the qualified immunity defense without further clarification of the facts, it may issue a discovery order narrowly tailored to uncover only those facts needed to rule on the immunity claim." *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014) (citation omitted). As the court has concluded that Plaintiffs' Amended Complaint is still lacking in some aspects and does not set forth allegations sufficient to overcome or defeat Andres's qualified immunity defense, discovery is premature, should not take place, and is hereby **stayed** until further order of the court.

## IV.     Conclusion

For the reasons stated herein, the court **grants in part** and **denies in part** Thedrick Andres' Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 18) to the extent herein set forth; and **grants in part** and **denies in part** Defendant City of Arlington's Second Motion to Dismiss Under Rules 12(b)(1) and 12(b)(6) (Doc. 20) to the extent herein set forth. Plaintiffs shall file a Second Amended Complaint in accordance with the court's instructions and shall file their amended pleading by **April 20, 2018**. Given that this will be the second amended pleading, and in light of the age of this case, this deadline will not be extended. The City and Andres may file a third and final motion to dismiss if they believe that the amended pleading does not meet the *Twombly* and *Iqbal* standards. Any motions to dismiss must be filed within 21 days after Plaintiffs file their amended pleading.

**It is so ordered** this 30th day of March, 2018.

*Sam A. Lindsay*

Sam A. Lindsay
United States District Judge