# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| JORDAN MAY, JASMINE MAY, and AVA MAY, as next of kin of JUAN ONEIL MAY decedent; and JINDIA MAY BLOUNT, individually and as representative of THE ESTATE OF JUAN ONEIL MAY, deceased, | § § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. **3:16-CV-1674-L** |
| CITY OF ARLINGTON, TEXAS, a municipality; and THEDRICK ANDRES, individually and in his official capacity as a Police Officer for the CITY OF ARLINGTON, | § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendant City of Arlington's Third Motion to Dismiss Under Rules 12(b)(1) and 12(b)(6) and Brief Filed in Response to Plaintiffs' Second Amended Original Complaint (Doc. 28), filed May 14, 2018; and Thedrick Andres' Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 30), filed May 31, 2018. Plaintiffs did not file a response to the motions.[1] After careful consideration, the court **grants** Defendant City of Arlington's Third Motion to Dismiss Under Rules 12(b)(1) and 12(b)(6) (Doc. 28) to the extent that all federal claims are dismissed with prejudice; and also **grants** Defendant Thedrick Andres' Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 30) with respect to Plaintiffs' federal claims, and **dismisses with prejudice** such claims.

---

[1] This is the second time that Plaintiffs have not filed a response to motions to dismiss.

**Memorandum Opinion and Order – Page 1**

# I.      Background

The court will not set in detail the background regarding this action, as it has been set forth sufficiently in two prior Memorandum Opinion and Orders regarding previously filed motions to dismiss.  *See* Docs. 12 & 24.

In Plaintiffs' Second Amended Original Complaint ("Second Amended Complaint") (Doc. 25), which is the live pleading in this action, Plaintiffs Jordan May, Jasmine May, and Ava May as next of kin of Juan O'Neil May ("Juan May"), decedent; and Jindia May Blount, individually and as representative of the estate of Juan May, deceased, assert claims against the City of Arlington (the "City") and Thedrick Andres ("Andres") as a result of the fatal shooting of Juan May on June 21, 2014.  Specifically, Plaintiffs assert claims against the City and Andres under the Fourth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983 ("§ 1983"); claims for wrongful death under Texas law; a survival claim under Texas law; and a civil rights claim under § 1983 for violation of familial relationship.  The common theme of Plaintiffs' claims is that Andres used excessive force when he shot and killed Juan May and wrongfully caused his death, and that May's death was the result of unconstitutional policies or customs of the City.

In its motion, the City contends that: (1) the court lacks jurisdiction over Plaintiffs' claims for punitive damages under federal law; (2) Plaintiffs have not adequately alleged that Juan May was injured as a result of a constitutionally deficient policy or custom of the City; and (3) Plaintiffs failed to file the Second Amended Complaint by April 20, 2018, which was the deadline established by the court.[2]

---

[2] The City and Andres both make this argument.  The Second Amended Complaint was filed on April 21, 2018, one day late.  The court **denies** this argument as a basis for dismissing the Second

Andres contends that, unless Plaintiffs have sufficiently alleged a claim for excessive force under the Fourth Amendment to the United States Constitution, all federal claims fail as a matter of law. He contends that he is entitled to qualified immunity and that Plaintiffs have failed to plead facts to overcome his defense of qualified immunity. The court first addresses the City's motion.

Once again, the court reminds the parties that it is required to accept all well-pleaded facts of a complaint as true and view them in the light most favorable to Plaintiffs. *Sonnier*, 509 F.3d at 675. The court restates this important principle of law because both Defendants, at times, clearly do not accept Plaintiffs' view or version of what transpired the night of June 21, 2014. Whether Defendants disagree with the narrative told by Plaintiffs is of no moment, as the court simply is dealing with this case at the motion-to-dismiss stage and only tests the sufficiency of the pleadings. If allegations are well-pleaded, it is not for the court to determine whether they ultimately prove to be true. That is grist for another day. Accordingly, all matters that the City and Andres question as true are disregarded if the specific allegations support Plaintiffs' positions.

Further, at times, the City and Andres argue matters that are evidentiary in nature and not part of the pleadings. Matters that are not part of the pleadings have been ignored by the court, and the court will consider the context in which allegations are made and make reasonable inferences based upon those allegations. Defendants know this, but they continue to inject matters that are not part of the pleadings and provide their interpretations of straightforward allegations to dampen what Plaintiffs have set forth in the Second Amended Complaint.

---

Amended Complaint because it exalts form over substance, and Defendants have failed to show the court how they have suffered any legal prejudice by a filing that was one day late.

Finally, many of Plaintiffs' allegations in the Second Amended Complaint are simply inapposite and argumentative, and do not assist the court in its analysis and determination of the pending motions to dismiss. As such, the irrelevant allegations have been disregarded by the court.

This case presents a regrettable set of facts and is highly charged with emotions, but this does not lessen the parties' obligation to maintain complete candor with the court. The absence of complete candor by engaging in conduct described in the three preceding paragraphs hinders the prompt administration of justice, as it unnecessarily requires the court to divert its attention from the real issues and deal with time-consuming red herrings and rabbit trails.

## II.    The City's Motion to Dismiss

### A.    Rule 12(b)(6) – Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief

above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp*., 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted). Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

**B.      Standard for Municipal Liability Under 42 U.S.C. § 1983**

A governmental entity can be sued and subjected to monetary damages and injunctive relief under 42 U.S.C. § 1983 only if its official policy or custom causes a person to be deprived of a federally protected right. *Board of the Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A governmental entity cannot be liable for civil rights violations under a theory of respondeat

superior or vicarious liability. *Id.*; *see also Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979). Official policy is defined as:

> 1.     A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [city] lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2.     A persistent, widespread practice of [city] officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents [city] policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the [city] or to an official to whom that body had delegated policy-making authority.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc); *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc). For purposes of a motion to dismiss under Rule 12(b)(6), a plaintiff must plead facts from which the court can reasonably infer that the "challenged policy was promulgated or ratified by the city's policymaker." *Groden v. City of Dallas, Texas*, 826 F.3d 280, 285 (5th Cir. 2016). "[C]ourts should not grant motions to dismiss for [the] fail[ure] to plead the specific identity of the policymaker." *Id.* (citing *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346 (2014)).

The ultimate question in deciding the sufficiency of a complaint is whether a person has alleged facts to show that a policymaker promulgated or ratified an unconstitutional policy or custom that resulted in injury to him or her. Although a plaintiff need not offer proof of his or her allegations at the pleading stage, a plaintiff "must plead facts that plausibly support each element of § 1983 municipal liability." *Peña v. City of Rio Grande, Tex.*, 879 F.3d 613, 621 (5th Cir. 2018) (citation omitted). In other words, a plaintiff must set forth facts, or those from which the court can reasonably infer, that: "(1) an official policy; (2) promulgated by the municipal policymaker; (3) was the moving force behind the violation of a constitutional right." *Hicks-*

*Fields v. Harris Cty.*, 860 F.3d 803, 808 (5th Cir. 2017) (footnote and citations omitted). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citations omitted).

To defeat "a motion to dismiss, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'" *Balle v. Nueces Cty. Tex.*, 690 F. App'x 847, 852 (5th Cir. 2017) (quoting *Spiller v. City of Tex. City Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)). In other words, the pleadings are adequate with respect to a section 1983 claim against a city when they set forth "specific factual allegations that allow a court to reasonably infer that a policy or practice exists and that the alleged policy or practice was the moving force" for the constitutional violation asserted. *Id.* (citation omitted). Although *Spiller* is over twenty years old, its holding that allegations of an allegedly unconstitutional policy or custom of a local government may not be stated conclusorily but must set forth specific facts is still solid law, and it was recently cited with approval by the Fifth Circuit in *Peña*. 879 F.3d at 622. If a complaint does not meet the standard set forth in *Spiller*, an action cannot "proceed beyond the pleading stage." *Id.*

The policy or custom relied upon to establish liability may include the inaction of official policymakers, but only when such inaction constitutes "deliberate indifference" to the rights of the plaintiff, and such indifference is a "closely related" cause of the plaintiff's injuries. *City of Canton v. Harris*, 489 U.S. 378, 388, 391 (1989). The failure or inaction "must amount to an intentional choice, not merely an unintentionally negligent oversight." *Rhyne v. Henderson Cty.*, 973 F.2d 386, 392 (5th Cir. 1992) (citing *City of Canton*, 489 U.S. at 390). Accordingly, municipal liability cannot be imposed against a city because of the negligence of its employees.

To do so would predicate liability on a theory of respondeat superior, which is not allowed under *Monnell*. 436 U.S. at 694.

###         C.         Analysis Regarding Municipal Liability of the City

####             1.         The Allegations of Plaintiffs' Second Amended Complaint

The court summarizes the relevant allegations of Plaintiffs' pleadings regarding municipal liability. The court, however, in ruling on the motions to dismiss, focuses only on the salient allegations necessary and relevant to make a dispositive ruling.

The City contends that the allegations of Plaintiffs' Second Amended Complaint are conclusory and general, and fail to show that any policy or custom of the City caused Plaintiffs to be deprived of a constitutionally protected right. For this reason, the City contends that Plaintiffs' Second Amended Complaint fails to meet the pleading requirements of *Twombly* and *Iqbal*, that the allegations of Plaintiffs' pleading fail to state a claim upon which relief can be granted regarding municipal liability, and that the federal claims regarding municipal liability against the City should be dismissed. The court agrees.

The court in two separate opinions previously set forth the pleading requirements for municipal liability. (Doc. 12 at 15; Doc. 24 at 8-14). Plaintiffs' Second Amended Complaint fares no better than their First Amended Complaint (Doc. 17), despite the court's explanation why it failed short of meeting the pleading requirements to defeat a Rule 12(b)(6) motion.

In the Second Amended Complaint, Plaintiffs contend that the use of force by Andres when he shot Juan May was excessive and that it was the result of several unconstitutional policies and customs of the City. In other words, Plaintiffs contend that the allegedly constitutionally-deficient policies and customs were the moving force that allowed Andres to use excessive force that killed Juan May and caused them to suffer damages.

As to the allegedly unconstitutional policies, Plaintiffs contend that the City failed to train and supervise its police officers, overlooked and covered up officer misconduct, failed to discipline officers for their misconduct, and turned a "blind eye" to constitutional violations of its police officers; and that these alleged policies and customs constituted a deliberate and conscious indifference to citizens' rights and, thus, resulted in the denial of Juan May's right to be free from an unreasonable search and seizure. Pls.' Sec. Am. Compl. ¶ 67. Plaintiffs also contend that the City had a policy or custom of authorizing and tacitly encouraging the use of excessive force by its police officers because the Internal Affairs Division of the Arlington Police Department ("APD"), past and present chiefs of police of the APD, and former and present mayors and city councils of the City have taken certain unspecified "formal and informal actions" that have overlooked misconduct of its police officers against citizens. Pls.' Sec. Am. Compl. ¶ 69.

The allegations regarding municipal policy are conclusory and extremely short on specificity, and underscore the paucity of specific allegations regarding municipal liability. Conclusory statements are not specific facts, and the description of the allegedly unconstitutional policies or customs of the City and their relationship to the alleged underlying constitutional violation are not specific.

As stated before, Plaintiffs' allegations by and large are quite general and conclusory, and do not meet the pleading requirements of *Twombly* and *Iqbal*, or what is necessary to state a claim for municipal liability. Conclusions are not prohibited, but there must be sufficient factual bases to support the conclusions. While Plaintiffs have liberally sprinkled their Second Amended Complaint with the correct legal buzzwords, the use of such words alone will not state a claim upon which relief can be granted. Here, the allegations against the City, for the most

part, are no more than a formulaic recital of some of the elements necessary to establish municipal liability.

To underscore the conclusory nature of Plaintiffs' allegations, the court provides the following example: A person may say that another person is drunk or intoxicated, but, without more, this is merely a conclusion and without at least some of the underlying facts to support the conclusion, a determination cannot be made with respect to whether there is a reasonable belief to infer that the person may be intoxicated. On the other hand, if the person states that the other person smelled of alcohol, had glassy and bloodshot eyes, had slurred speech, walked unsteadily or staggered, had poor coordination or reacted slowly in physical movement or in response to questions, kept repeating himself or talking incessantly, and was overly loud and energetic, these would be some of the underlying facts or allegations for the court to reasonably infer that such person was intoxicated. Plaintiffs' allegations regarding the alleged policies or customs of the City teem with conclusions and unsupported allegations. As such, they do not rise above the speculative level. Given the numerous deficiencies in the allegations against the City, the court cannot reasonably infer that it would be liable to Plaintiffs for the misconduct alleged in the Second Amended Complaint.

Plaintiffs do make a few allegations regarding the lack of training with respect to the use of deadly force that are more specific than their overall allegations regarding municipal liability; however, the allegations, nevertheless, fall short of stating a claim upon which relief can be granted for municipal liability against the City. *See* Pls.' Sec. Am. Compl. ¶¶ 74-76, and 80. They allege that "recruiting ordinary citizens, putting them through a 6 to 9 month training academy and placing them on the streets of [Arlington] armed with deadly weapons is enough to support municipal liability." Pls.' Sec. Am. Compl. ¶ 74. In conjunction with this theory,

Plaintiffs allege that the City failed "to provide adequate training and vetting" of Andres and that the City's "decision to offer only 32 weeks of inadequate training[] to graduate individuals from its police academy that are not able to employ non-lethal alternatives and also graduate individuals that have a deliberate indifference to firing bullets into the chests of unarmed individuals," as Andres allegedly did, constitutes deliberate indifference on the part of the City that was the moving force behind the death of Juan May. Pls.' Sec. Am. Compl. ¶ 80. The court disagrees.

From what the court can draw from these allegations is that the City's training in its academy for persons desiring to become police officers is 32 weeks. At one point, Plaintiffs alleged six to nine months, but they clarified the time in paragraph 80 of their pleadings. The court has checked the website of the Texas Commission on Law Enforcement ("Commission"), the state agency that sets the standards and qualifications for one to become a licensed peace officer. The information shows that the Commission requires a minimum of 643 hours for a person to become a licensed peace officer. The court takes judicial notice of this information pursuant to Federal Rule of Evidence 201(c)(2), as the information regarding the minimum number of hours required can be readily determined from a source whose accuracy cannot be reasonably questioned. Fed. R. Evid. 201(b)(2).[3] Moreover, even without the court taking judicial notice of this information from the Commission's website, there is not a scintilla or hint of an allegation in the pleadings that the 32 weeks fall below any state-required minimum for a person to become a licensed peace officer in Texas.

---

[3] The court declines the City's request to take judicial notice of the information in its Appendix. The court refuses to do so because: (1) such notice is unnecessary for the court to make a ruling, and (2) it questions whether the information proposed by the City falls within the scope of Federal Rule of Evidence 201.

The 32 weeks' of training of which Plaintiffs complain far exceeds the minimum-required 643 hours. Thirty-two weeks multiplied by 40 hours per week comes to 1,280 hours, which is nearly twice that required by the State of Texas. Even if the training were only six months, the number of hours exceeds 1,000, which is far more than the minimum mandated by the State of Texas. Plaintiffs' allegations that the City's police academy training exhibits a deliberate indifference to the rights of citizens of the City and was the moving force fail as a matter of law to sufficiently allege municipal liability against the City.

With respect to paragraph 23 of Plaintiffs' Second Amended Complaint, Plaintiffs combine the incident made the basis of this action and a recent firing of Arlington police officer Brad Miller to allege that the City condones a pattern of misconduct by its police officers. To the extent that Plaintiffs are also obliquely asserting municipal liability under the single-incident principle, in that the City failed to train Andres, such theory fails. This principle comes from *City of Canton v. Harris*, 489 U.S. at 390 n.10. The single-incident exception is usually "reserved for those cases in which the government actor was provided no training whatsoever." *Peña*, 879 F.3d at 624. Plaintiffs' allegations fall woefully short of coming within the ambit of this narrow exception, and no allegations in the pleadings are sufficient for the court to reasonably infer that Andres received no training at all to become a police officer for the City.

With respect to former police officer Brad Miller, the reference to him is quite beside the point and in no way supports Plaintiffs' theory that a policy or custom of the City was the moving force behind the death of Juan May. As Miller was discharged, his discharge necessarily means that the City conducted an investigation and determined that Miller did not follow his training or violated some aspect of police procedure. The pleadings only mention Miller in passing, but, at a minimum, the reference shows that the City investigates alleged misconduct of

a police officer against a citizen. More to the point, because Plaintiffs describe the incident as "recent," the court reasonably infers that it occurred after the shooting of Juan May and, therefore, the incident involving Brad Miller has no bearing on the existence of any allegedly unconstitutional policy or custom at the time of Juan May's death in June 2014.

Finally, to the extent that Plaintiffs contend that these two incidents show a pattern or custom of the City, such allegation is insufficient for the court to conclude that Plaintiffs have alleged sufficient facts to state a claim upon which relief can be granted. This is so because "[i]solated violations are not the persistent, often repeated, constant violations that constitute custom or policy." *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984) (citations omitted) (en banc). Plaintiffs' Second Amended Complaint is totally devoid of any pattern of incidents similar to those made the basis of this action.

## III.    Andres's Motion to Dismiss

### A.    Qualified Immunity Standard

Government officials who perform discretionary functions are entitled to the defense of qualified immunity, which shields them from suit as well as liability for civil damages, if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A defendant official must affirmatively plead the defense of qualified immunity. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Andres has asserted this defense in his motion to dismiss and answer.

In deciding a dispositive motion that raises the defense of qualified immunity, the Supreme Court initially set forth a mandatory two-part inquiry for determining whether a government official was entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Under *Saucier*, a court must determine first whether the facts alleged or shown are

sufficient to make out a violation of a constitutional or federal statutory right. If the record sets forth or establishes no violation, no further inquiry is necessary. On the other hand, if the plaintiff sufficiently pleads or establishes that a violation could be made out, the court must determine whether the right at issue was clearly established at the time of the government official's alleged misconduct. *Id.* The Court relaxed this mandatory sequence in *Pearson v. Callahan*, 555 U.S. 223 (2009), and stated, "[W]hile the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory," and judges "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. In excessive force cases, the second prong of the test "is better understood as two separate inquiries: whether the allegedly violated constitutional right[] [was] clearly established at the time of the incident; and if so, whether the conduct of the defendant[] [official] was objectively unreasonable in light of that then clearly established law." *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017) (quoting *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (internal quotation marks and citations omitted)); *see also Evans v. Ball*, 168 F.3d 856, 860 (5th Cir. 1999); *Hare v. City of Corinth,* 135 F.3d 320, 326 (5th Cir. 1998); *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995).

Ordinarily, one who pleads an affirmative defense must establish his entitlement to such defense. In the context of qualified immunity, however, this burden varies from the norm. In this circuit, the rule is as follows:

> Where . . . [a] defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff then has the burden to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law. We do not require

that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.

*Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997) (internal quotations and citations omitted); *see also Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

A right is "clearly established" only when its contours are sufficiently clear that a reasonable public official would have realized or understood that his conduct violated the right in issue, not merely that the conduct was otherwise improper. *See Anderson v. Creighton,* 483 U.S. 635, 640 (1987); *Foster v. City of Lake Jackson*, 28 F.3d 425, 429 (5th Cir. 1994). Thus, the right must not only be clearly established in an abstract sense but in a more particularized sense so that it is apparent to the official that his actions [what he is doing] are unlawful in light of pre-existing law. *Anderson v. Creighton*, 483 U.S. at 640; *Stefanoff v. Hays County*, 154 F.3d 523, 525 (5th Cir. 1998); and *Pierce v. Smith*, 117 F.3d at 871.

In *Anderson*, 483 U.S. at 641, the Court refined the qualified immunity standard and held that the relevant question is whether a reasonable officer or public official *could have believed* that his conduct was lawful in light of clearly established law and the information possessed by him. If public officials or officers of "reasonable competence could disagree [on whether the conduct is legal], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (*citing Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)). Qualified immunity is designed to protect from civil liability "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. at 341. Conversely, an official's conduct is not protected by qualified immunity if, in light of clearly established pre-existing law, it was apparent the conduct, when undertaken, would be a violation of the right at issue. *Foster*, 28 F.3d at 429. To preclude qualified immunity, it is not necessary

for a plaintiff to establish that "the [specific] action in question has previously been held unlawful." *Anderson*, 483 U.S. at 640. For an official, however, to surrender qualified immunity, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law *in the circumstances.*" *Pierce v. Smith*, 117 F.3d at 882 (emphasis in original and citation omitted); and *Stefanoff v. Hays County*, 154 F.3d at 525. Stated differently, while the law does not require a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011) (citations omitted).

In analyzing qualified immunity claims, the Supreme Court has "repeatedly told courts … to not define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citation omitted). Pursuant to *Mullenix*, courts must consider "whether the violative nature of *particular* conduct is clearly established" and must undertake this inquiry "in light of the specific context of the case, not as a broad general proposition." *Id.* (citations and internal quotations marks omitted).

To defeat or overcome an official's qualified immunity defense, a plaintiff's complaint must allege specific facts that, if proved, would show that the official's conduct violated clearly established constitutional or statutory rights. In cases involving claims of qualified immunity, often it is appropriate to require a plaintiff to file a detailed reply to address the plea of qualified immunity. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc). "[T]he reply must be tailored to the assertion of qualified immunity and fairly engage its allegations. A defendant has an incentive to plead his defense with some particularity because it has the practical effect of requiring particularity in the reply." *Id.* A plaintiff generally must be given the opportunity to

reply with greater specificity in such cases before the court rules on a defendant's dispositive motion. *Todd v. Hawk*, 72 F.3d 443, 446 (5th Cir. 1996).

A reply, however, is only required when the claims in the complaint are not supported "with sufficient precision and factual specificity to raise a genuine issue as to the illegality of [a] defendant's conduct at the time of the alleged acts." *Schultea*, 47 F.3d at 1434. If "the pleadings on their face show an unreasonable violation of a clearly established constitutional right," the assertion of a qualified immunity defense is insufficient to sustain a Rule 12(b)(6) motion to dismiss. *Shipp v. McMahon,* 234 F.3d 907, 912 (5th Cir. 2000), *overruled in part on other grounds by McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002) (en banc). In this case, the Second Amended Complaint serves the same function as a reply.

## B. Excessive Force

A plaintiff's claim for excessive force must be determined according to Fourth Amendment standards because "*all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original). Determining whether the force used was reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396 (citation omitted). The issue of reasonableness centers on whether the officer's actions are "objectively reasonable" in light of the facts and circumstances with which he is faced, without regard to the officer's underlying intent or motivation. *Id*. at 397 (citation

omitted). Whether the use of force is reasonable "must be judged from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight." *Id*. at 396. In applying *Graham*, the Fifth Circuit uses a three-part test that requires a plaintiff to show "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016) (citation omitted); *Tarver v. City of Edna*, 410 F.3d at 751 (citation omitted). Injury can be one that is physical or psychological. *Ikerd v Blair*, 101 F. 3d 430, 434 n.9 (5th Cir. 1996).

### C. Analysis

#### 1. Factual Allegations Relating to Qualified Immunity and Excessive Force

According to the Second Amended Complaint, Juan May, Andres, and a number of other individuals were celebrating the birthday party of Edwin Debiew on June 21, 2014. The group left Pappadeaux's Seafood Kitchen ("Pappadeaux's") in Duncanville, Texas, in a party bus and traveled to various locations, after which the group began its return to Pappadeaux's.

On the return trip, a verbal altercation occurred. Patrick May, a cousin of Juan May, suggested that Andres dance on a stripper pole located inside the party bus. Andres took offense to the suggestion, and words were exchanged. Andres wanted to know why Patrick May wanted him (Andres) to dance on the pole since Patrick May had a "broad" with him. Andres referred to Patrick May as "suspect" and "a dick in the booty ass nigga." "Suspect" refers to someone who another person suspects as being gay or homosexual. "A dick in the booty ass nigga" refers to a Black male who is gay or homosexual. Both terms are derogatory. The word "broad" is an offensive term used to refer to a female, and the court is personally familiar with the meaning of all of these terms. According to Plaintiffs, Juan May attempted to diffuse the tension by dancing

on the pole to amuse those on the bus. Andres was overheard saying to his wife, "These niggas got me fucked up, and they don't know who they are fucking with."

When the bus arrived at Pappadeaux's parking lot, some of the persons on the bus assisted with the cleanup of the bus, and others exited the bus. Juan May, Patrick May, Jindia Blount, Andres, and Forynthia Andres (Andres's wife) were among those who exited the bus. Juan May, at some point, began putting party supplies into the trunk of his vehicle. As Juan May was putting supplies into his trunk, he had his back to Andres, who was standing a few feet away. Patrick May walked up to Juan May and whispered some words to him, and Juan May walked over to Andres and said, "We aren't going to do all this tonight." Andres said something in response to Juan May, and Juan May struck Andres in the face with his hand. What Andres said to Juan May is unknown. Andres began fighting back, and Patrick May attempted to break up the fight between Andres and Juan May. Andres struck Patrick May in the face with his hand, and he and Patrick May began fighting. At some point during the encounter, Andres "lost his footing." Juan May walked away as the fight continued between Patrick May and Andres, although it is not clear in Plaintiffs' pleadings at what exact point Juan May walked away during the fight between Andres and Patrick May. Although both Defendants assert that Juan May and Patrick May were fighting with Andres at the same time, the pleadings really do not support this contention. Within a few seconds of Juan May walking away, the fight between Andres and Patrick May ended, and Patrick May then walked away. The entire fight lasted only a couple of minutes.

As the fight between Andres and Patrick May ended, Juan May was walking away with his back to Andres. After the fight ended, Andres got off the ground and ran toward his car, past his wife. Andres's wife stated that he had a gun in the car. She then unlocked the vehicle

remotely, and Andres, at some point, entered his car. His wife, while standing only a few feet away, took no steps to get into the vehicle with Andres. As Andres was running to his car, "unknown" people in the area began yelling that Andres was about to get a firearm or gun. According to Plaintiffs, Juan May ran after or followed Andres to "calm him" and to prevent him from obtaining a firearm and escalating what had already transpired. Juan May did not run after Andres until he heard statements that Andres was running to his car to get a firearm or gun. Juan May made physical contact with Andres during the encounter at Andres's car when he tried to prevent Andres from retrieving his firearm. From this physical contact, the court can reasonably infer that, at a minimum, some type of struggle occurred between Juan May and Andres.

Initially, there appears to be some conflict and confusion as to when Andres was identified as a police officer as reflected in Plaintiffs' Second Amended Complaint; however, paragraph 15 states, "Following Officer Andres' statement that he was a 'cop,' he entered his vehicle, reached down and retrieved his gun." Later in that same paragraph, Plaintiffs allege that, "As he raised from his vehicle, Officer Andres again stated he was a cop and fired a bullet into the chest of Juan May." Yet in another part of their pleadings, Plaintiffs assert that Andres "announced himself as a police officer multiple times prior to retrieving his off-duty firearm." Pls.' Sec. Am. Compl. ¶ 32.[4]  After being shot by Andres, Juan May "backed away" and fell to

---

[4] Paragraph 15 of Plaintiffs' Second Amended Complaint alleges that James Birdine stated that it was Forynthia Andres who stated that Andres was a police officer. In this same paragraph, Plaintiffs allege that Jindia May Blount "does not recall Officer Andres announcing himself as a police officer at all[.]" This of course, does not mean that Andres never announced that he was a police officer; it simply means that she cannot recall or remember whether Andres made such announcement and, therefore, this statement is neutral, meaning that she does not know whether he made such announcement. Still, another statement in paragraph 15, attributed to Jindia May Blount, alleges that Andres did not announce himself as a police officer until officers of the Duncanville Police Department arrived on the scene. In the final analysis, Plaintiffs acknowledge and concede that Andres "announced himself as a police officer multiple times prior to retrieving his off-duty firearm," and that the "announcement that he was a 'cop' placed individuals on notice that he had entered into his official capacity as an officer of the law." Pls.' Sec. Am.

the ground.  He was later transported to Methodist Hospital by ambulance and pronounced dead on June 22, 2014, shortly after one o'clock a.m.

The fight between Juan May and Andres, and that between Andres and Patrick May, did not involve weapons.  The two fights were fistfights.  At no time did Patrick May have a weapon of any kind in his possession.  A weapon was not involved until Andres used a firearm to shoot Juan May during the later encounter at Andres's vehicle.  From the point when Andres got up from the ground until he shot and killed Juan May took approximately 45 to 60 seconds.

Andres contends that the facts as alleged by Plaintiffs show that he is entitled to qualified immunity and that all federal claims against him should be dismissed.  The court agrees, and elects to do its analysis under the second prong of *Saucier*, namely, whether the right at issue was clearly established at the time of the public official's alleged misconduct.  *Pearson*, 555 U.S. at 236.

## 2.      Discussion

Andres cites several cases that he contends are similar to the circumstances presented in this case: *Romero v. City of Grapevine*, 888 F.3d 170 (5th Cir. 2018); *Mendez v. Poitevent*, 823 F.3d 326 (5th Cir. 2016); and *Colson v. Barnhart*, 130 F.3d 96 (5th Cir. 1997).  These cases are not cases with circumstances or facts similar to this case.  First, all three of these cases are summary judgment cases with developed factual records.  The current case is at the motion-to-dismiss stage, and the court is bound by the standard that it set forth earlier.  A case involving a summary judgment motion or a trial is not authority for dealing with a Rule 12(b)(6) motion, unless the case specifically states or holds that a party has failed to *allege, assert,* or *set forth*

---

Compl. ¶ 32.  This statement by Plaintiffs, from the court's perspective, satisfies the court that Juan May knew that Andres was a police officer prior to the time Andres fired the fatal shot.

sufficient facts to state a claim upon which relief can be granted; or the case cites some principle of law that would apply equally to the analysis of a motion to dismiss and motion for summary judgment. As this court has repeatedly stated herein, and in other cases, a Rule 12(b)(6) motion *only* tests the sufficiency of the allegations in the pleadings. Summary judgment cases and trials test the sufficiency of the evidence. Cases that deal with a summary judgment or trial rarely assist the court in any manner as to whether a party has sufficiently pleaded allegations to state a claim upon which relief can be granted.

Second, the facts in the three cases relied upon by Andres are not remotely similar to the facts alleged in this case. The facts presented in *Romero*, *Mendez,* and *Colson* all show that the conduct of the law enforcement officers in question was not objectively unreasonable. In other words, a reasonable officer faced with the facts presented could have believed that the use of deadly force was justified, as the officers in each case were faced with an immediate threat of serious bodily injury or harm.[5] Notwithstanding this erroneous reliance, the inquiry does not end here, as a plaintiff must set forth allegations that, if proved to be true, demonstrate that an officer's conduct was objectively unreasonable. Further, the question that the court has to resolve is "whether the violative nature of the particular conduct is clearly established." *Ashcroft*, 563 U.S. at 742 (citations omitted).

The essence of Plaintiffs' argument regarding qualified immunity is that, even though Juan May threw the first punch and struck Andres in the face, the fight between him and Andres, and that between Andres and Patrick May, was *over*; and that the use of deadly force against an

---

[5] Andres advances the narrative that he was badly beaten by Juan and Patrick May, and he wants the court to accept this narrative. Although evidence not available to the court may support Andres's narrative, the live pleadings do not support this version. The court is confined to the pleadings and cannot consider matters outside the pleadings.

unarmed Juan May was unjustified and objectively unreasonable. Their argument is that Juan May ran after Andres to prevent him from obtaining a firearm and avoiding what ultimately took place—the death of Juan May at the hands of Andres. Parallel to this theory, Plaintiffs in essence contend that Andres unnecessarily created or manufactured a dangerous situation or, at a minimum, revived an incident that had already concluded.

In reviewing the pleadings and making reasonable inferences based on the pleadings, the court focuses on the cogent and salient allegations of Plaintiffs' Second Amended Complaint. First, Juan May struck Andres in the face after Andres said something to him. Nothing in the pleadings indicates that this blow was justified. In other words, there is not any indication that what Andres said to Juan May constituted a threat to use violence against Juan May, put him in harm's way, or caused him to fear for his safety.

Second, Juan May ran behind Andres and caught up with him at Andres's vehicle. In parsing the pleadings and looking at them in the light most favorable to Plaintiffs, the court is satisfied that Andres announced himself as a police officer or "cop" in sufficient time prior to the firing of the fatal shot for Juan May to hear Andres and withdraw from him. By Plaintiffs' own admission, this announcement was made several times before Andres got into his vehicle. Despite this announcement, Juan May did not retreat from Andres or stop struggling with him. There was some level of a struggle between Andres and Juan May before Andres finally obtained his gun and fatally shot Juan May. As stated earlier, from the time Andres got up from the ground in his fight with Patrick May until he shot Juan May was 45-60 seconds. From what the court can ascertain from reading the pleadings, the confrontation was a tense and rapidly evolving event, and a court must give due consideration to the speed in which matters can unfold or develop during confrontations.

**Memorandum Opinion and Order – Page 24**

Plaintiffs emphasize that the earlier fights were those involving fists and no weapons. While this is true, a person can be seriously injured or even killed by being struck with another's fists. Further, Plaintiffs do not allege or set forth any allegations regarding the physical size of Andres or Juan May. This certainly can be a factor regarding the use of deadly force and the injury an officer might suffer during an encounter. Also, when Andres was at his vehicle, he encountered an individual with whom he had just fought and, despite the announcements that he was a police officer, the individual continued to advance and engage in physical contact with him.

The shouts from bystanders that Andres was running to his car to get a firearm or a gun is not outcome-determinative, even though Andres ultimately obtained a weapon. The ultimate inquiry as to whether an officer is entitled to qualified immunity regarding the use of deadly force is restricted to whether the officer or another individual was in danger at the time the force was used. As the Fifth Circuit has stated, "[R]egardless of what had transpired up until the shooting itself, [the decedent's] movements gave the officer reason to believe, at that moment, that there was a threat of physical harm." *Fraire v. City of Arlington*, 957 F. 2d 1268, 1276 (5th Cir. 1992) (citation omitted).

Considering the allegations pleaded in the light most favorable to Plaintiffs and acknowledging that Juan May suffered a fatal injury, the court cannot say that Andres's act of shooting Juan May was objectively unreasonable under the circumstances. Stated another way, the use of deadly force by Andres was not clearly excessive or clearly unreasonable. In coming to this conclusion, the court does not take into account Andres's underlying intent or motivation but only considers the facts and circumstances with which he was faced at the time he fired the fatal shot. *See Graham*, 490 U.S. at 397. Moreover, if reasonable, competent police officers

could disagree as to the legality of an officer's conduct in light of the applicable law and information possessed by that officer at the time he or she acts, qualified immunity applies. *Malley*, 475 U.S. at 341. The court expressly determines that, at a minimum, reasonable police officers could disagree as to the use of deadly force by Andres on June 21, 2014. Accordingly, this serves as an alternative basis for Andres's entitlement to qualified immunity.

## IV. Miscellany

### A. Punitive and Exemplary Damages

The court has previously ruled that punitive or exemplary damages are not recoverable against the City regarding Plaintiffs' federal claims and cited *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981), for this holding. This ruling applies to Andres to the extent he is sued in his official capacity, as an official-capacity suit is to be treated as a suit against the entity that hires the public employee or official. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Likewise, to the extent Andres is sued in his official capacity, Plaintiffs' municipal liability claim against him also fails. These rulings stand, and the court will not revisit or alter them.

### B. Standing of Jindia Blount

The court has ruled on whether Jindia Blount can maintain claims in her individual capacity and held that she cannot do so regarding the Texas Wrongful Death and Survival statutes. The court will not revisit or change this ruling.

### C. Status of Plaintiffs' Claims Under the Wrongful Death and Survival Statutes

Except for Jindia Blount attempting to assert claims in her individual capacity, the court is not certain of the status of these claims regarding other Plaintiffs, as it is not aware of any motion or request to dismiss these claims specifically. A person is allowed under § 1983 to seek

damages under these statutes. *Rhyne*, 973 F. 2d at 390-91 (citations omitted); *Pluet v. Frasier*, 355 F. 3d 381, 383 (5th Cir. 2004) (citation omitted). The court, however, does not recall them being addressed sufficiently in the context of § 1983. Both Defendants urge the court to dismiss all of the *federal* claims, yet there is not sufficient discussion of the dismissal of the state-law claims under the Wrongful Death and Survival Statutes. The parties are to clarify in writing the status of these claims. Any explanation or clarification[6] may not exceed **seven** pages, excluding the signature page, and the clarification must be filed by **March 27, 2019**.

### D.    Amendment of Pleadings

The provision of Rule 15(a)(2) of the Federal Rules of Civil Procedure that states "[t]he court should freely give leave when justice so requires" is not without limitation. The decision to allow amendment of a party's pleadings is within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted). In determining whether to allow an amendment of the pleadings, a court considers the following: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted).

As Plaintiffs maintain that their Second Amended Complaint adequately states claims upon which relief can be granted, the court concludes that Plaintiffs have stated their best case after "three bites at the apple." As the Fifth Circuit aptly stated, "[a]t some point, a court must decide that [Plaintiffs have] had fair opportunity to make [their] case; if, after that time, a cause

---

[6] This requirement also applies Andres's argument in Section IV(A) of his motion to dismiss.

of action has not been established, the court should finally dismiss the suit." *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986). As Plaintiffs have pleaded their "best case," permitting a fourth pleading attempt would be an inefficient use of the parties' and court's resources; and given the age of this case, would cause unnecessary and undue delay; and would be futile. Accordingly, the court **allows** no further amendment of pleadings.

## V. Conclusion

For the reasons herein stated, the court **grants** Defendant City of Arlington's Third Motion to Dismiss Under Rules 12(b)(1) and 12(b)(6) (Doc. 28) to the extent that all federal claims are **dismissed with prejudice**; and also **grants** Defendant Thedrick Andres' Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 30) with respect to Plaintiffs' federal claims, and **dismisses with prejudice** such claims. Further, the court **directs** the parties to clarify with specificity the status of the state law claims, as directed herein, and the clarification shall be filed by **March 27, 2019**.

**It is so ordered** this 20th day of March, 2019.

Sam A. Lindsay
United States District Judge